T.C. Memo. 1997-191

UNITED STATES TAX COURT

WARREN G. BUCK AND JUDITH A. BUCK, Petitioners, <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5719-95.                    Filed April 24, 1997.

<u>Glenn H. Ripa</u>, for petitioners.

<u>John Aletta</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following addi-
tions to petitioners' Federal income tax:

<table>
<tr><td colspan="4" align="center">Additions to Tax</td></tr>
<tr><td>Year</td><td>Sec. 6653(a)(1)[1]</td><td>Sec. 6653(a)(2)</td><td>Sec. 6661(a)</td></tr>
<tr><td>1983</td><td>$1,393</td><td>*</td><td>$6,965</td></tr>
</table>

---

[1]  All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

Additions to Tax

* 50 percent of the interest due on $27,859.

The issues for decision are:

(1)  Are petitioners liable for 1983 for the additions to tax under section 6653(a)(1) and (2)?  We hold that they are.

(2)  Are petitioners liable for 1983 for the addition to tax under section 6661(a)?  We hold that they are.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Plainfield, New Jersey, at the time the petition was filed.

Starting around 1979 upon completion of his medical training, petitioner Warren G. Buck,[2] a physician specializing in internal medicine and cardiology, was employed by the Menlo Park Medical Group (Menlo Group), where he has remained employed during all relevant periods.  During 1983, the year at issue, petitioner Judith A. Buck was employed by Victory Memorial Hospital as a registered nurse, and as of the date of the trial herein she was employed as a nurse practitioner at Lutheran Medical Center.

Around 1974, petitioners began using the accounting and tax return preparation services of Peter J. Amsterdam (Mr. Amster-

---

[2]  Hereinafter, references to petitioner in the singular are to petitioner Warren G. Buck.

dam), a certified public accountant, who was a partner of Nicholas J. Coscia (Mr. Coscia) in the accounting firm of Coscia and Amsterdam (Coscia and Amsterdam). Petitioners never had any problems with Mr. Amsterdam's tax return preparation services.

Sometime during the early 1980's, petitioner asked Mr. Amsterdam on several occasions for recommendations regarding possible investment opportunities, but Mr. Amsterdam declined to make any such recommendations until around 1983. Around that year, Mr. Amsterdam recommended to petitioner that he invest in Ridge Energy Systems (Ridge Energy), a limited partnership in which both Mr. Amsterdam and Mr. Coscia had invested and which Mr. Amsterdam described to petitioner as a "good investment" that would allow petitioner to reduce his taxes through a tax credit and at the same time make a profit.

Based on petitioner's discussions with Mr. Amsterdam and his review of a document that petitioner believed was a prospectus (prospectus), it was petitioner's understanding that Saxon Energy Corporation (Saxon Energy) was to lease certain energy-saving, cost-efficient heating and cooling systems (energy systems) to Ridge Energy, Ridge Energy was to re-lease those systems to various businesses interested in reducing their heating and cooling costs, and Ridge Energy was to derive a profit for its partners from that leasing activity.

Before deciding whether to invest in Ridge Energy, petitioner did not (1) review a copy of any lease agreement that

Ridge Energy may have had with Saxon Energy, (2) have or attempt to obtain an appraisal of the energy systems used by Ridge Energy, (3) know how those energy systems were to be marketed, or (4) know specifically how Ridge Energy was to make a profit.

During 1983, based on the advice of Mr. Amsterdam and his review of the prospectus, petitioner invested approximately $13,000 in, and became a 14.1-percent partner of, Ridge Energy. During that year, Ridge Energy had 15 partners, including Mr. Amsterdam and Mr. Amsterdam's partner Mr. Coscia.

At all relevant times before and after petitioner invested in Ridge Energy, the investments of one or both petitioners consisted of their residence, certain savings bonds, interest-bearing accounts at certain financial institutions, a life insurance policy, two mortgages that petitioner inherited from his father around 1975, and an interest in Tricat, a facility in which petitioner invested around the time he joined the Menlo Group on the advice of another physician employed by that group, at which certain medical tests were administered, and to which certain physicians employed by the Menlo Group referred many of their patients.

On August 9, 1984, Ridge Energy filed Form 1065 (U.S. Partnership Return of Income) for 1983 (1983 partnership return) in which Ridge Energy claimed a loss of $98,900 that consisted of lease expenses of $96,000, management fees of $2,800, and legal fees of $100.  Ridge Energy claimed a basis of $1,485,000 for

investment tax credit purposes in the energy systems that it leased from Saxon Energy.

Petitioners filed a joint Federal income tax return for 1983 (return) on or before April 15, 1984, that was prepared by Mr. Amsterdam. They did not know how partnership deductions, losses, and investment tax credits are calculated for Federal income tax purposes, and they relied on Mr. Amsterdam to determine, inter alia, any such deductions, losses, and/or credits that they claimed in their 1983 return, including those arising as a result of petitioner's partnership interest in Ridge Energy. Petitioners claimed a total partnership loss of $21,279 in Schedule E (Supplemental Income Schedule) of their 1983 return (1983 Schedule E). An attachment to petitioners' 1983 Schedule E showed that that loss is attributable to a $7,360 loss with respect to Tricat, the medical facility in which petitioner invested, and a $13,919 loss with respect to Ridge Energy, the partnership in which petitioner invested. In Form 3468 (Computation of Investment Credit) included as part of their 1983 return, petitioners claimed a basis for investment tax credit purposes of $210,863, of which $208,990 is attributable to Ridge Energy, and an investment tax credit of $21,086, of which $20,899 is attributable to Ridge Energy.

On August 6, 1987, respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) to the tax matters partner for Ridge Energy in which respondent disallowed the loss

and the investment tax credit claimed by that partnership for 1983. On January 7, 1988, an action was commenced in this Court in <u>Ridge Energy Systems, Nicholas J. and Sandra Coscia, A Partner Other Than the Tax Matters Partner v. Commissioner</u>, docket No. 413-88, contesting the adjustments made in the FPAA. On March 11, 1994, this Court entered a decision under Rule 248(b) sustaining respondent's disallowance of the deductions and the basis for investment tax credit purposes reported by Ridge Energy in its 1983 partnership return.

Respondent determined in the notice of deficiency (notice) that petitioners are liable for 1983 for the additions to tax under sections 6653(a)(1) and (2) and 6661(a). Respondent imposed those additions to tax because of the underpayment in petitioners' 1983 return that is attributable to the loss of $13,919 and the investment tax credit of $20,899 with respect to Ridge Energy that they claimed in that return.

### OPINION

Petitioners bear the burden of proving that respondent's determinations in the notice are erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

### Section 6653(a)(1) and (2)

Section 6653(a)(1) imposes an addition to tax equal to five percent of the entire underpayment if any part of it is due to negligence or intentional disregard of rules or regulations. If that addition to tax is imposed, section 6653(a)(2) imposes a

further addition to tax in an amount equal to 50 percent of the interest payable with respect to the portion of the underpayment that is attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Under certain circumstances, a taxpayer may avoid the additions to tax for negligence by showing that he or she reasonably relied on the advice of a competent professional. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). However, a taxpayer bears the responsibility for any negligent errors of his or her professional adviser. See American Properties, Inc. v. Commissioner, 28 T.C. 1100, 1116-1117 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958). Reliance on a professional adviser, standing alone, is not an absolute defense to negligence; it is only one factor to be considered. Freytag v. Commissioner, supra at 888. In order for reliance on a professional adviser to excuse a taxpayer from the additions to tax for negligence, the taxpayer must establish that the professional adviser on whom he or she relied had the expertise and knowledge of the relevant facts to provide informed advice on the subject matter. See id.

Petitioners argue that they are not liable for the additions to tax under section 6653(a)(1) and (2) because petitioner reasonably relied on his tax adviser when he invested in Ridge Energy and they reasonably relied on that adviser when they claimed in their 1983 return the loss and credit with respect to that partnership.[3]  Petitioners contend that their reliance on Mr. Amsterdam was reasonable because Mr. Amsterdam had been their tax adviser from sometime around 1974 through the time of the trial in this case; during that time they never had any problems with Mr. Amsterdam's tax return preparation services; prior to Mr. Amsterdam's recommending to petitioner that he invest in Ridge Energy, petitioner had asked Mr. Amsterdam on several occasions for recommendations regarding possible investment opportunities, but Mr. Amsterdam declined to make any such recommendations; and both Mr. Amsterdam and Mr. Coscia were investors in Ridge Energy.

Respondent counters that petitioners were negligent in relying on their tax adviser in investing in Ridge Energy and in

[3]  Petitioners argued at trial that, because this Court entered a decision pursuant to the parties' agreement in Coscia v. Commissioner, docket No. 11093-95S (Mar. 28, 1996), that the taxpayers in that case are not liable for the additions to tax under sec. 6653(a)(1) and (2) with respect to adjustments attributable to their investment in Ridge Energy, petitioners in this case should not be held liable for those additions to tax.  We reject that argument.  We are not bound in this case by any decision that we entered in another case involving additions to tax imposed upon another taxpayer who, like petitioner, was a partner in Ridge Energy and that was based on the agreement of the parties in that other case.

claiming in their 1983 return the loss and credit with respect to that partnership.[4]  We agree with respondent.

Claims of reasonable reliance upon an adviser have been rejected when the adviser upon whom the taxpayer relied knows nothing about the business in which that taxpayer invested. E.g., Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480.  Petitioners have failed to show that Mr. Amsterdam, upon whom petitioner claims he relied, and/or Mr. Coscia, the only person whom the record discloses Mr. Amsterdam consulted about Ridge Energy, (1) knew anything about the energy management activities of Ridge Energy, (2) had any investment or other experience that qualified them to be in a position to recommend that petitioner invest in Ridge Energy,[5] (3) had, or attempted to obtain, an appraisal of the energy systems leased by that partnership; or (4) were not promoters for Saxon Energy. Nor did petitioners establish that they otherwise took steps to ensure themselves of the bona fides of investing in Ridge Energy.

Petitioner testified that Mr. Amsterdam gave him the prospectus which petitioner reviewed and that that prospectus contained, inter alia, (1) a statement from a law firm that

[4]  Respondent does not argue that petitioners are liable for the additions to tax under sec. 6653(a)(1) and (2) because they intentionally disregarded rules or regulations.

[5]  Indeed, petitioner testified that he was not aware whether or not Mr. Amsterdam had any expertise in the area of energy management systems.

respondent audited a taxpayer who, petitioner believed, had invested in Ridge Energy around 1981 and that that audit did not give rise to additional taxes; (2) figures showing how a profit was supposed to be earned; and (3) the identity of the chairman of the board of Saxon Energy, who was a certified public accountant.  There is no prospectus that is part of the trial record in this case.[6]  Based on petitioner's incomplete description of the contents of the prospectus that he testified he reviewed, we do not find that it was reasonable and prudent to rely upon the promotional materials in it in deciding to invest in Ridge Energy.  See, e.g., Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991).

Although petitioner testified that he invested in Ridge Energy with a good faith intention to make a profit, any such subjective profit motive is not dispositive in deciding whether he acted negligently, and the record does not establish that he (or petitioner Judith A. Buck) made any independent investigation to determine how that profit was to be derived.  Instead, peti-

_____

[6]  We note that petitioners attached to their trial memorandum that the Court had filed in this case a document that purports to be an "information memorandum" that apparently was prepared on behalf of Saxon Energy and that was to be used "only by prospective lessees of Saxon Energy".  Assuming arguendo that that information memorandum were part of the trial record in this case, we would not find that it was reasonable and prudent to rely on it in deciding to invest in Ridge Energy.  See, e.g., Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991).

tioner relied on Mr. Amsterdam's representation that Ridge Energy was a "good investment". In addition, although petitioner's testimony demonstrated that he understood that Ridge Energy proposed to lease the energy systems from Saxon Energy and, in turn, lease them to various businesses, he did not know at the time he invested in Ridge Energy how those systems were to be marketed, nor did he know specifically how Ridge Energy was to make a profit. Moreover, when petitioner was asked on direct examination about whether he was concerned that during 1983 he invested approximately $13,000 in Ridge Energy and yet claimed in his 1983 return a loss of $13,919 and an investment tax credit of $20,899 with respect to that partnership, petitioner replied: "Well, I didn't have an opinion about it. I thought that the deductions which were figured out by the certified public accountant would be correct." There is no evidence in the record indicating that petitioners questioned Mr. Amsterdam about the loss and the credit claimed in their 1983 return with respect to Ridge Energy. This Court and other courts have found that a reasonable and prudent person would have asked a competent tax adviser whether a windfall similar to the one realized by petitioners were "'too good to be true.'" See, e.g., Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993) (quoting McCrary v. Commissioner, 92 T.C. 827, 850 (1989)), affg. Donahue v. Commissioner, T.C. Memo. 1991-181.

We believe that a reasonable and prudent person, who was earning over $200,000 a year at the time petitioner decided to invest in Ridge Energy and who claims that he intended to earn a profit from an investment of approximately $13,000 in certain energy systems allegedly worth $1,485,000, would have independently investigated the potential profitability of such an investment or would have relied upon an adviser who had expertise in such an investment to make such an investigation.  This is especially true in the case of petitioner who is highly educated, lacks significant investment experience, and apparently has no expertise in the area of energy systems.

Petitioners cite Reile v. Commissioner, T.C. Memo. 1992-488, and Eubanks v. Commissioner, T.C. Memo. 1990-227, to support their position that their reliance upon Mr. Amsterdam was reasonable and prudent under the circumstances presented here.  However, both of those cases are distinguishable from the facts in this case.  In the Reile case, we found that the taxpayers there involved, one of whom had only a high school education and the other of whom had one year of college and who invested solely on the advice of their financial and tax adviser in a partnership that was a tax shelter, were not liable for the additions to tax under section 6653(a)(1) and (2) because they reasonably relied on that adviser.  Unlike the taxpayers in Reile v. Commissioner, supra, petitioners are highly educated.  In addition, unlike petitioners' adviser Mr. Amsterdam, the adviser in the Reile case

was a financial planner, as well as an accountant, and the taxpayers in that case established that that adviser had investigated the partnership involved in that case and had concluded and advised the taxpayers therein that that partnership was of "high quality", that it would "best satisfy * * * [their] investment goals", that he had spoken to representatives of that partnership, and that he was satisfied with the investment. Reile v. Commissioner, supra.

In Eubanks v. Commissioner, supra, certain of the taxpayers were physicians (taxpayer-physicians) who owned and operated a medical clinic (clinic) that leased certain space (leased space) in an office building. The clinic assigned its rights under that lease to a real estate partnership (Partnership) in which those taxpayer-physicians were partners, and the Partnership made certain expenditures to renovate the leased space and subleased it back to the clinic. The taxpayers in Eubanks relied upon professional tax return preparers to prepare their individual returns and the Partnership's Form 1065. The Partnership claimed qualified rehabilitation expenditures in its Form 1065, and the taxpayer-physicians claimed investment tax credits arising from their respective shares of the Partnership's claimed rehabilitation expenditures. Although the taxpayer-physicians in Eubanks v. Commissioner, supra, testified that they provided their return preparers with all the information that they had regarding their tax returns, they could not specifically state whether that

information included a copy of the Partnership's lease for the leased space. Respondent disallowed the investment tax credits claimed by the taxpayers in Eubanks and imposed the additions to tax under section 6653(a)(1) and (2) because of, inter alia, the taxpayers' respective underpayments attributable to such claimed credits. In contrast to respondent's position in the present case, respondent did not contend in Eubanks v. Commissioner, supra, that the tax return preparers should have further investigated the leasing transaction at issue in that case. Moreover, unlike the instant case where respondent does not contend that there was some document or other information that petitioners withheld from Mr. Amsterdam, in Eubanks respondent contended that the taxpayers must be found negligent because they did not show that they gave their return preparers a copy of the Partnership's lease for the leased space and that they therefore did not establish that they provided their return preparers with complete information, as required to avoid the imposition of the additions to tax for negligence. We found in the Eubanks case that the taxpayers were not liable for the additions to tax for negligence that were attributable to the claimed investment tax credits because they reasonably relied on the advice of professional tax return preparers on a tax matter that was not "self-evident". In so holding, we found that the Partnership's lease was not facially relevant to the investment tax credits claimed in the taxpayers' returns and that to require them to have had the level

of expertise necessary for them to have understood the relevance of that lease to their returns would be tantamount to holding those taxpayers to a higher standard than that of a reasonable and prudent person.

Based on the entire record before us, we find that petitioners have failed to satisfy their burden of proving that they did not act negligently when they claimed in their 1983 return a loss of $13,919 and an investment tax credit of $20,899 with respect to Ridge Energy. Accordingly, we sustain respondent's determination for that year imposing the additions to tax under section 6653(a)(1) and (2).

Section 6661(a)

Section 6661(a) imposes an addition to tax equal to 10 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement of income tax exists where the amount of tax shown in the taxpayer's return is less than the amount required to be shown in his or her return. Sec. 6661(b)(2)(A). In the case of an individual, an understatement is substantial where it exceeds the greater of $5,000 or 10 percent of the tax required to be shown in the taxpayer's return. Sec. 6661(b)(1)(A). In a case involving a tax shelter like the Saxon Energy leasing program in question,[7]

---

[7] Petitioner does not dispute that the Saxon Energy leasing program in question is a tax shelter. See Schillinger v. Commissioner, T.C. Memo 1990-640, affd. without published opinion 1

(continued...)

the amount of the understatement is reduced by the portion of it that is attributable to the tax treatment of any item with respect to which the taxpayer has or had substantial authority for his or her position and for which the taxpayer reasonably believed that the tax treatment was more likely than not the proper treatment.  Sec. 6661(b)(2)(B) and (C).

Petitioners argue that they had substantial authority for the loss of $13,919 and the investment tax credit of $20,899 that they claimed in their 1983 return with respect to Ridge Energy, but they presented no evidence and make no argument that they believed that that return position regarding those items was more likely than not the proper treatment.  Petitioners further argue that they reasonably and in good faith relied upon their tax adviser in claiming those items and that they are not liable for the addition to tax under section 6661(a).

Respondent counters that petitioners did not have substantial authority for the tax treatment of the items that they claimed in their 1983 return with respect to Ridge Energy, that it was not reasonable for them to rely on their tax adviser, and that therefore petitioners are liable for the addition to tax under section 6661(a).

The regulations under section 6661 provide in pertinent part:

---

[7](...continued)
F.3d 954 (9th Cir. 1993).

> Conclusions reached in * * * legal opinions or opinions
> rendered by other tax professionals * * * are not
> authority.  The authorities underlying such expressions
> of opinion where applicable to the facts of a particu-
> lar case, however, may give rise to substantial author-
> ity for the tax treatment of an item. * * * [Sec.
> 1.6661-3(b)(2), Income Tax Regs.]

Although petitioner testified that he relied upon petition-
ers' tax adviser Mr. Amsterdam to determine the loss and the
credit in question, there is no evidence in the record regarding
what, if any, authority Mr. Amsterdam relied on in determining
petitioners' entitlement to those items.

Although not altogether clear, petitioners appear to argue
that they are entitled under section 6661(c) to a waiver of the
addition to tax under section 6661(a) because their understate-
ment of income tax was the result of relying upon Mr. Amsterdam
when petitioner invested in Ridge Energy and when they filed
their 1983 return.  Section 6661(c) allows respondent to waive
all or a portion of the addition to tax under section 6661(a)
upon a showing by the taxpayer that there was reasonable cause
for the understatement (or a part thereof) and that the taxpayer
acted in good faith.  The regulations under section 6661(c)
provide in pertinent part:

> In making a determination regarding waiver of the
> penalty under section 6661, the most important factor *
> * * will be the extent of the taxpayer's effort to
> assess the taxpayer's proper tax liability under the
> law. * * * In addition, circumstances that may indicate
> reasonable cause and good faith include an honest
> misunderstanding of fact or law that is reasonable in
> light of the experience, knowledge, and education of
> the taxpayer. * * * Reliance on an information return

> or on the advice of a professional (such as an appraiser, an attorney, or an accountant) would not necessarily constitute a showing of reasonable cause and good faith.  Similarly, reliance on facts that, unknown to the taxpayer, are incorrect would not necessarily constitute a showing of reasonable cause and good faith.  Reliance on an information return, professional advice, or other facts, however, would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * * [Sec. 1.6661-6(b), Income Tax Regs.]

Section 6661(c) does not state that the taxpayer's proof of reasonable cause and good faith will excuse the taxpayer from being held liable for the addition to tax imposed by that provision.  Rather, that section provides that respondent may waive imposition of that addition to tax in cases in which she determines that the taxpayer's failure was due to reasonable cause and was premised on good faith.

Petitioners have not established that they submitted to respondent information relating to their reliance on their adviser Mr. Amsterdam that would show that there was reasonable cause for their understatement of tax for 1983 and that they acted in good faith.  However, assuming arguendo that petitioners requested a waiver under section 6661(c) that respondent refused to grant, the standard for review of respondent's decision not to grant any such request is whether respondent abused her discretion.  Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

We have found that petitioners failed to prove that they acted reasonably in claiming a loss and an investment tax credit

in their 1983 return with respect to Ridge Energy.  On the record before us, we further find that, assuming arguendo that petitioners sought a waiver under section 6661(c), they have not established that respondent abused her discretion in not granting any such request.

Based on the entire record before us, we find that petitioners have failed to satisfy their burden of proving that for 1983 they had substantial authority for claiming in their 1983 return the loss of $13,919 and the investment tax credit of $20,899 with respect to Ridge Energy, that that return position was more likely than not the proper treatment, and that, assuming arguendo that petitioners requested a waiver under section 6661(c), respondent abused her discretion in not granting any such request.  Accordingly, we sustain respondent's determination imposing for 1983 the addition to tax under section 6661(a).

To reflect the foregoing,

<u>Decision will be entered for</u>
<u>respondent</u>.