Leo **GOLDMAN** and Pauline Goldman, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent–Appellee.

No. 242, Docket 94–4027.

United States Court of Appeals, Second Circuit.

Argued Sept. 8, 1994.

Decided Nov. 2, 1994.

Norman Nadel, New York City, for petitioners-appellants.

Randolph L. Hutter, Tax Div., Dept. of Justice, Washington, DC (Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, Tax Div., Dept. of Justice, Washington, DC, of counsel), for respondent-appellee.

Before: MESKILL, MAHONEY and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

In this appeal from a judgment of the United States Tax Court, Fay, *J.*, we must determine whether a settlement agreement between petitioners-appellants Leo and Pauline Goldman and the Internal Revenue Service (IRS) for the 1981 tax year also applied to their 1982 tax liability, and whether appellants, who filed joint returns for both tax years, properly deducted their share of the losses of an oil exploration partnership on their 1982 joint federal income tax return. The tax court answered both these questions in the negative, and found appellants liable for an income tax deficiency for the 1982 tax year, plus additions to tax under 26 U.S.C. §§ 6621(c) (underpayment attributable to a tax-motivated transaction), 6653(a)(1) and (2) (negligent underpayment of tax), and 6661 (substantial underpayment of tax), as in effect in 1982. We have jurisdiction over appellants' timely appeal pursuant to 26 U.S.C. §§ 7482(a) and 7483. We affirm.

## BACKGROUND

In December 1991 Leo Goldman signed a purchase agreement for one and one-half units in Midcontinent Drilling Associates-II (MCDA-II), a limited partnership formed to engage in oil and gas exploration. Goldman first learned of the MCDA-II partnership in late 1981 from Stephen Burr, a member of the accounting firm that regularly prepared appellants' personal and business tax returns. Burr showed Goldman MCDA-II's offering memorandum, which stated that the partnership was organized to engage in drilling operations and to use a "Terra-Drill" in drilling for oil, and which also contained maps showing that several large oil companies were drilling near MCDA-II's proposed site.

While the partnership's purported purpose was to generate profits, the offering memorandum estimated that limited partners would assume partnership losses of $40,000 for every $10,000 invested for the first three years, permitting each limited partner to deduct up to 400 percent of an initial investment from his or her federal income tax returns in those years. The offering memorandum stated that these deductions in-creased the likelihood that a limited partner's tax return would be audited by the IRS, and warned that investment in the partnership was not recommended for investors without both a substantial net worth and a marginal federal income tax bracket of at least 49 percent. MCDA-II derived this loss in large part from an expensive sublicense agreement for the right to use the Terra-Drill, even though no prototype of the drill had been developed. The offering memorandum also stated that MCDA-II possessed no oil production or transportation facilities.

Goldman invested $15,000 in MCDA-II in both 1981 and 1982, and appellants claimed their share of the losses of the partnership as deductions on their 1981 and 1982 joint federal income tax returns in the amounts of $59,400 and $64,451, respectively. Goldman based his investment decision on his review of the offering memorandum and on Burr's advice. Burr had no experience in the oil and gas business, and his knowledge about MCDA-II also was limited to what he read in the offering memorandum. Burr was listed on the MCDA-II subscription agreement signed by Goldman as the soliciting dealer and sales representative. Burr received a commission as a result of Goldman's investment.

On August 6, 1987 the Commissioner informed appellants by letter that the deduction of MCDA-II's losses in their 1981 tax return was disallowed. The letter offered a settlement whereby appellants could deduct 75 percent of their initial investment as a loss in 1981 if they waived all deductions arising from the partnership for all other years. The offer also included forgiveness of any penalties, but required the assessment of interest on the unpaid tax. Appellants refused to accept the settlement offer, which the Commissioner withdrew on July 8, 1988.

Appellants then received another settlement offer concerning their 1981 return on November 2, 1988. This second offer came in the form of a handwritten letter from IRS Appeals Officer Seymour Margolis, which stated that appellants would be allowed to deduct 100 percent of their initial investment as a loss on their 1981 tax return. The offer

further stated that no other deductions derived from MCDA–II's losses would be allowed in any other year, that all penalties would be removed, and that interest would be applied on any unpaid tax. Leo Goldman accepted the offer by signing and returning an enclosed form, and on July 7, 1989 Margolis sent appellants a form entitled "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment" (Form 870–AD), which permitted the $15,000 deduction, recalculated appellants' 1981 taxes, and assessed interest. Both appellants signed and returned this form, which referred only to their tax liability for 1981 and made no reference to any other tax year.

The Commissioner also disallowed the $64,451 deduction claimed by appellants on their 1982 tax return for their share of MCDA–II's losses, and assessed penalties for an underpayment attributable to a tax-motivated transaction and for negligent and substantial underpayment.[1] Appellants petitioned for a review of this determination before the tax court, which sustained the deficiency and penalties assessed by the Commissioner. *See Goldman v. Commissioner,* T.C.Memo. 1993–480, 66 T.C.M. (CCH) 1060, 1993 WL 414846 (1993). This appeal followed.

## DISCUSSION

### A. *Settlement Agreement*

Appellants first contend that they are not liable for any tax deficiency for 1982 because the settlement agreement reached with Appeals Officer Margolis resolved the tax consequences of their investments in MCDA–II not only for 1981 but for all subsequent years. The tax court held that the settlement agreement applied only to appellants' 1981 tax liability and did not cover any subsequent years. To the extent that it constitutes a finding of fact, the tax court's

determination that an agreement was reached by the parties is reviewable for clear error. *Sullivan v. Commissioner,* 985 F.2d 704, 706 (2d Cir.1993). The Court reviews *de novo,* however, the tax court's interpretation of the clear terms of that agreement. *See Rothenberg v. Lincoln Farm Camp,* 755 F.2d 1017, 1019 (2d Cir.1985).

Under the settlement agreement appellants agreed to waive all restrictions on the assessment and collection of the deficiency in their 1981 joint tax return, while the recalculated amount permitted appellants to deduct their $15,000 investment in MCDA–II for that year. The agreement further removed the addition to tax for an overstatement of a deduction's value, pursuant to section 6659 of the Code. In return, appellants agreed to a deficiency determination:

Pursuant to the provisions of section 6213(d) of the Internal Revenue Code of 1986 or corresponding provisions of prior internal revenue laws the undersigned offers to waive the [notice] restrictions provided in section 6213(a) of the Internal Revenue Code of 1986 or corresponding provisions of prior internal revenue laws and to consent to the assessment and collection of the following deficiencies with interest as provided by law.

The agreement then specifically assessed appellants' deficiency of $25,374 for the year ending December 31, 1981, and did not mention appellants' tax liability for any other year. Both appellants executed their consent to the deficiency amount, and the agreement subsequently was "[a]ccepted for [the] Commissioner" by Vincent J. Simone, Associate Chief of the Long Island Appeals Office, who was Appeals Officer Margolis' superior.

As the settlement agreement constituted a contract, general principles of contract law must govern its interpretation. *See Treaty Pines Invs. Partnership v. Commissioner,* 967 F.2d 206, 211 (5th Cir.1992); *cf. SEC v. Levine,* 881 F.2d 1165, 1178–79 (2d

---

1. The penalties assessed by the Commissioner were as follows:

| Year | Deficiency | § 6653(a)(1) | § 6653(a)(2) | § 6661 |
|------|-----------|--------------|--------------|--------|
| 1982 | $34,581 | $1,729.05 | 50% of interest due on $33,192 | $8,645.25 |

In addition, the Commissioner applied a penalty under § 6659 and assessed additional interest under § 6621(c), but conceded the former penalty in its answer before the tax court.

Cir.1989) (holding consent judgment should be construed as contract) (collecting cases). These principles dictate that where the language of a contract is unambiguous, " 'its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature.' " *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 272 (2d Cir.1992) (quoting John D. Calamari & Joseph M. Perillo, *Contracts* 166–67 (3d ed. 1987)). Appellants argue that the agreement should be interpreted to limit their tax liability for their investments in MCDA–II for all subsequent tax years, as well as 1981. The terms of the Form 870–AD signed by appellants had "a definite and precise meaning, unattended by danger of misconception ... of the [agreement] itself," *Hunt Ltd. v. Lifschultz Fast Freight*, 889 F.2d 1274, 1277 (2d Cir.1989) (quotation omitted), however, and the tax court correctly concluded that the agreement defined appellants' tax liability only for the 1981 tax year. *See Goodheart*, 962 F.2d at 273.

Appellants also argue that Appeals Officer Margolis' November 2, 1988 dated proposal letter, and not the Form 870–AD, constituted the settlement agreement between the parties. We fail to see how this argument helps the appellants. The letter informed appellants that "[y]ou will be allowed as an ordinary deduction in the initial year (1981) 100% of your 'out-of-pocket [sic] cash investment." The letter explicitly limited this offer, however, to the 1981 tax year: "Other than as provided [above], no losses are allowable in any year as a result of your investment in the Mid–Continent Drilling Associates Partnership." Goldman signalled his assent to this offer by checking an acceptance provision and returning the letter. This agreement subsequently was memorialized in the Form 870–AD. The proposal letter, however, merely contained a conditional offer of settlement from the Commissioner that could not be binding until accepted by both appellants and executed in a separate closing agreement. *See Klein v. Commissioner*, 899 F.2d 1149, 1153 (11th

Cir.1990) (holding proposal letter from IRS was conditional offer that required execution of closing agreement to constitute binding contract). Further, Appeals Officer Margolis was assigned to review only appellants' 1981 tax liability, and he had no authority to bind the Commissioner to a settlement for a term of years. *See Dorl v. Commissioner*, 507 F.2d 406, 407 (2d Cir.1974) (per curiam) (holding that letter of assurance from revenue officer who was not authorized to compromise does not bind IRS); *see also Klein*, 899 F.2d at 1153; *Estate of Jones v. Commissioner*, 795 F.2d 566, 572–73 (6th Cir. 1986). Absent the signing of a closing agreement (Form 906) resolving the MCDA–II issues for a period of years, the settlement agreement reached by the parties did not constitute a binding closing agreement covering other years under section 7121 of the Internal Revenue Code. *See Consolidated Freightways v. United States*, 620 F.2d 862, 868, 223 Ct.Cl. 443 (1980) (holding Form 870 alone does not constitute binding settlement agreement). Accordingly, the tax court correctly determined that appellants were liable for the deficiency in 1982 as well as the interest assessed pursuant to section 6621(c) on that amount.[2]

### B. *Negligence*

Appellants also challenge the penalties assessed by the Commissioner on the deficiency. The tax court found the penalties appropriately applied because appellants negligently claimed their share of MCDA–II's losses as deductions. This finding will not be reversed unless it is clearly erroneous. *Sullivan*, 985 F.2d at 706; *see also Wolf v. Commissioner*, 4 F.3d 709, 715 (9th Cir. 1993); *Sandvall v. Commissioner*, 898 F.2d 455, 459 (5th Cir.1990).

Section 6653(a)(1) of the Internal Revenue Code requires the assessment of a five percent penalty on an underpayment of tax if any part of that underpayment "is due to negligence or intentional disregard of

---

**2.** Section 6621(c) establishes that the interest rate on an underpayment shall be 120 percent of the statutory rate if the underpayment was attributable to a tax motivated transaction. *See* 26 U.S.C. § 6621(c). Appellants do not contest the assessment of interest under section 6621(c) before this Court.

rules or regulations." 26 U.S.C. § 6653(a)(1). Likewise, section 6653(a)(2) imposes a penalty of an additional fifty percent of the interest payable on the amount of the underpayment found to be attributable to negligence. 26 U.S.C. § 6653(a)(2)(A). Once the Commissioner determines that a negligence penalty is appropriate, the taxpayer bears the burden of establishing the absence of negligence. *Wolf,* 4 F.3d at 715; *Freytag v. Commissioner,* 904 F.2d 1011, 1017 (5th Cir.1990), *aff'd,* 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991); *see also In re MDL–731—Tax Refund Litigation,* 989 F.2d 1290, 1303 (2d Cir.) (holding government entitled to presumption that assessment of penalties under 26 U.S.C. § 6700 was correct), *cert. denied,* —— U.S. ——, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993). The negligence standard employed in section 6653(a) is an objective one, requiring a finding of "the lack of due care or the failure to do what a reasonable and prudent person would do under similar circumstances," *Allen v. Commissioner,* 925 F.2d 348, 353 (9th Cir.1991); *accord Pasternak v. Commissioner,* 990 F.2d 893, 902 (6th Cir.1993); *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir.1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968).

■ Appellants first argue that the negligence penalty should not apply because Goldman undertook the MCDA–II investment in good faith and after a diligent review of the offering memorandum. Goldman accepted the memorandum's claims of sizeable tax deductions, however, without obtaining an objective opinion concerning their validity. The offering memorandum indicated that the principal benefit a limited partner would receive was a tax deduction four times greater than the original amount invested, and advised that there was a high probability that such deductions would be questioned by the IRS. Further, although Goldman testified to a familiarity with oil exploration maps gained from a previous investment in an oil company, he ignored indications that MCDA–II's proposed project was illegitimate. For example, the offering memorandum set forth the high sublicense fee to be paid for the Terra–Drill, while it stated that no prototype of the drill had been developed or tested.

The memorandum also stated that MCDA–II had no transportation or pipeline facilities to produce and market any oil extracted. The tax court's determination here is consistent with its prior decisions that MCDA–II's offering memorandum would indicate to a reasonably prudent person that the partnership was established solely to generate tax deductions. *See Estate of Raney v. Commissioner,* T.C.Memo. 1992–684, 64 T.C.M. (CCH) 1409, 1992 WL 349772 (1992) (holding that MCDA–II's offering memorandum indicated a high likelihood that it would lose money in order to generate tax deductions); *Webb v. Commissioner,* T.C.Memo. 1990–556, 60 T.C.M., 1990 WL 161012 (CCH) 1085 (1990) (holding offering memoranda issued by six related partnerships, including MCDA–II, demonstrated that each sought to create the specific tax advantages it offered). We agree with the tax court's analysis of the tax treatment of appellant's investments in MCDA–II.

■ Appellants refer the Court to a recent decision by the tax court, *Wright v. Commissioner,* T.C.Memo. 1994–288, 1994 WL 276907 (June 23, 1994), in support of their argument that they did not act negligently. *Wright* involved a partnership associated with MCDA–II in which the tax court held that investors had not acted negligently in making the investment and taking a partnership-related tax deduction. *Wright* is distinguishable, however, given that it concerned taxpayers who performed substantially greater investigation into the purported merits of the investment, and who relied on a broker-salesman who actively misled the taxpayers with false claims about the viability of the Terra–Drill and the legality of the partnership's tax status. *See* 1994 WL 276907 at *4–5. Here, appellants themselves relied on an offering memorandum that clearly advertised improbable tax advantages. This fact alone is sufficient to support the tax court's finding that appellants acted negligently. *See Wolf,* 4 F.3d at 715 ("We need look no farther than [the partnership's] own marketing literature to hold that the tax court's findings of negligence are not clearly erroneous: the prospectus focused primarily on the tax benefits of the investment, and established on its face that a profit was highly

unlikely.""); *see also Pasternak,* 990 F.2d at 903 (holding reasonably prudent person should investigate claims when they are likely "too good to be true") (quotation omitted); *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir.1988) ("The discussions in the prospectus of high write-offs and the risk of audits should have alerted taxpayers that their deductions were questionable at best."). Similarly, appellants' argument that MCDA–II itself constituted a fraud on the IRS, as found by a civil jury in a case in the Southern District of Texas and by the tax court in *Webb,* T.C.Memo. 1990–556, cannot justify appellants' own failure to exercise reasonable care in claiming the losses derived from their investment in MCDA–II as a deduction.

[10, 11] Appellants also argue that they reasonably relied on Burr's evaluation of MCDA–II when making their investment. While reliance on professional advice can, in certain circumstances, provide a defense to a negligence penalty under section 6653(a), *see Illes v. Commissioner,* 982 F.2d 163, 166 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993); *Howard v. Commissioner,* 931 F.2d 578, 582 (9th Cir. 1991), such reliance must be objectively reasonable. *See United States v. Boyle,* 469 U.S. 241, 250, 105 S.Ct. 687, 692, 83 L.Ed.2d 622 (1985) (holding that taxpayer's reliance on attorney to file timely return was not reasonable under § 6651). Appellants' reliance on Burr for an objective opinion was unreasonable. Burr signed the limited partnership agreement as MCDA–II's sales representative. Appellants cannot reasonably rely for professional advice on someone they know to be burdened with an inherent conflict of interest. *See, e.g., Illes,* 982 F.2d at 166; *Pasternak,* 990 F.2d at 903. Further, Burr expressed no knowledge of drilling technology or the oil and gas business, he relied exclusively on the MCDA–II offering memorandum, and he made no independent inquiries regarding the partnership. Reliance on expert advice is not reasonable where the "expert" relied on knows nothing about the business in which the taxpayer invested. *Freytag,* 904 F.2d at 1017; *Collins,* 857 F.2d at 1386.

 Finally, appellants argue that they reasonably relied on the transmittal letter from the accounting firm of Levanthol & Horwath, accompanying the Schedule K–1 form for MCDA–II, as evidence of MCDA–II's legitimacy. Goldman had received a Schedule K–1 form from Levanthol & Horwath in early 1983, which declared that his partnership share of MCDA–II's income and losses for 1982 was $64,451. Goldman sent the Schedule K–1 form to Burr, whose firm then included the loss on appellants' 1982 joint tax return. Appellants' reliance on the transmittal letter also was unreasonable, however, given that it arrived long after appellants decided to invest in MCDA–II and it contained a specific disclaimer as to the merits of the partnership or any tax deductions taken.

In sum, appellants fail to establish any basis for their claim that their investment in MCDA–II was undertaken after a reasonable investigation of the partnership's merits. Accordingly, the tax court correctly sustained the imposition of the negligence penalties under sections 6653(a)(1) and (2) of the Internal Revenue Code.

## CONCLUSION

For the foregoing reasons the judgment of the tax court is affirmed.