T.C. Memo. 1997-245


UNITED STATES TAX COURT


DONALD A. ROBINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12422-95.                    Filed June 2, 1997.


Donald A. Robins, pro se.

<u>Randall P. Andreozzi</u>, for respondent.


MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) of the Code, and Rules 180, 181, and 182.
All section references are to the Internal Revenue Code in effect
for the taxable years in issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined additions to petitioner's Federal income taxes as follows:

| | Additions to Tax | | |
|---|---|---|---|
| Year | Sec. 6653(a)(1)/ 6653(a)(1)(A) | Sec. 6653(a)(2)/ 6653(a)(1)(B) | Sec. 6661 |
| 1985 | $407 | [1] | $2,035 |
| 1986 | 241 | [2] | -- |

[1] 50 percent of the interest due on $8,138, which represents the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

[2] 50 percent of the interest due on $4,825, which represents the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.

The Court must decide whether petitioner is liable for additions to tax under section 6653(a) for 1985 and 1986, and whether petitioner is liable for an addition to tax under section 6661(a) for 1985.

Some of the facts have been stipulated and are so found. For clarity and convenience, our findings of fact and opinion have been combined. Petitioner resided in Fairport, New York, when his petition was filed.

The issues in this case result from the Court's decision to sustain respondent's disallowance of charitable contribution deductions claimed by Mount Mercy Associates, a limited partnership, in 1985 and 1986. See Mount Mercy Associates v. Commissioner, T.C. Memo. 1994-83, affd. without published opinion 50 F.3d 2 (2d Cir. 1995). Our decision in Mount Mercy Associates

has been made a part of the record in the instant case, and to the extent necessary to decide the issues before us, we rely on the facts found by the Court in that decision.

Mount Mercy Associates (Mount Mercy or the partnership) was formed to acquire property which overlooked the Hudson River in Westchester County, New York. The partnership planned to build residential condominium units on the property. The property was owned by the Institution of Mercy, a not-for-profit corporation wholly owned by the Sisters of Mercy (Sisters), a religious order. The Sisters resided at and operated a nursing home in the Mount Mercy convent building on the property offered for sale. The convent building and surrounding grounds were situated on approximately 5 acres (the convent property). As a condition of the sale, the Sisters desired continued use of the convent property. The Institution of Mercy offered the entire property for sale at a $7.5 million asking price.

The partnership's Confidential Private Placement Memorandum (Memorandum) outlined plans to purchase the property from the Institution of Mercy. There were no plans to develop the convent property. Instead, the partnership intended to build up to 250 luxury condominiums on the remaining unimproved property. It was anticipated and understood, in accordance with the Sisters' desire to remain in possession of the convent property, that the partnership intended to deed the convent property back to the Institution of Mercy. To maximize anticipated tax benefits, 50

percent of the convent property was to be donated in 1985 and the remainder in 1986.

The Memorandum outlined the tax benefits and the tax risks to investors attributable to the donation of the convent property. The Memorandum explained that:

> The Partnership has engaged an independent real estate appraiser to determine the fair market value of the convent building. His appraisal is not expected to be completed before this offering closes. The value of the proposed gift is a question of fact, and there can be no assurance that, if the Partnership is audited by the Internal Revenue Service, such value will be accepted. The Internal Revenue Service may engage on its own an independent appraiser to value the charitable gift, and it is possible that the Service will arrive at a different value. The Partnership may have to resort to litigation to settle the issue.

The Memorandum repeatedly cautioned that the Internal Revenue Service might challenge the valuation of the convent property.

In a section entitled "Risk Factors", the Memorandum warned that:

> There can be no assurance that the value the Partnership will claim for the charitable deduction will be accepted by the Internal Revenue Service in the event of an audit of the Partnership's tax return. If the valuation is contested and a lower valuation results, the Partnership (and, hence, each Partner), will have disallowed, to that extent, a portion of its charitable deduction. * * * along with the assessment of interest on the deficiency and also the possible assessment of penalties, including the substantial overvaluation penalty (see Tax Aspects) which is equal to 30% of the deficiency in tax caused by the overvaluation.

In the subsection "Additions to Tax - Penalties & Interest", the Memorandum explained in detail that the substantial

understatement penalty under section 6661 or the valuation overstatement penalty under section 6659 could apply to the proposed charitable contributions. The Memorandum stated that:

> Investors should be aware, however, that these penalties exist, and, that the activities in which the Partnership will engage, and certain of the tax positions which it intends to take, are of the sort at which the penalties are directed. For example, a substantial charitable deduction will be claimed, the amount of which is based upon an appraisal. The value of the charitable contribution could be the subject of a valuation dispute, and there is no assurance that the Partnership would ultimately prevail in a dispute on this issue. If questioned by the Service, the issue of valuation may be resolvable only by litigation.

The Memorandum warned that "A PROSPECTIVE INVESTOR SHOULD OBTAIN PROFESSIONAL GUIDANCE FROM HIS OWN TAX ADVISOR IN EVALUATING THE TAX RISKS INVOLVED." This warning was made repeatedly throughout the Memorandum.

The Memorandum also stated that the summary of the Federal income tax consequences "was prepared under the direction of the law firm of Petralia, Webb & Bersani, P.C. * * * which has agreed to make itself available to answer the questions of potential investors, and which will develop, at closing, its opinion of the major tax consequences of an investment".

Attached as an exhibit to the Memorandum was a copy of the November 1, 1985, purchase and sale agreement between the partnership's initial general partner and the Institution of Mercy.

After the November 1, 1985, purchase and sale agreement was

signed, the partnership renegotiated the provisions of the sale with the Institution of Mercy. The purchase price remained at $9 million but cash to be paid at closing was reduced from $2 million to $400,000, and the $6 million note and mortgage were correspondingly increased to $7.6 million. On December 30, 1985, the Institution of Mercy conveyed the property to the partnership for $9 million under the following terms: $80,000 deposit paid December 1985; $10,000 additional deposit paid December 1985; $310,000 paid December 30, 1985; $1 million note and mortgage secured by the convent property; and $7.6 million note secured by the remaining unimproved property. The $7.6 million note and mortgage was nonrecourse and had an interest rate equal to the greater of 10 percent or 2 percent plus the prime commercial rate of the Bank of New York. The $1 million note and mortgage was nonrecourse, had no stated interest rate, and was subordinate to all mortgages which existed at the closing or arose thereafter. Payment of the $1 million note was due December 30, 1988.

As of the date of trial in Mount Mercy Associates v. Commissioner, supra, the mortgage note secured by the covenant property was not paid, even though all other obligations concerning the transactions were fully executed.

This Court found that the donation to the Institution of Mercy lacked economic substance and held that the partnership was not entitled to charitable deductions for 1985 and 1986. Mount Mercy Associates v. Commissioner, supra. We found that the

"substance of the transaction, considered in its entirety, is that the partnership purchased only the unimproved land for $8 million." Mount Mercy Associates v. Commissioner, supra. The Court found that the partnership attempted to structure a transaction which had the appearance, but not the substance, of a gift to charity. The Court stated that "The partnership's purchase of an unwanted and unnecessary asset with no additional cost to it should not result in a tax benefit where none was actually intended by the statutes or, as a matter of substance, the donee received nothing more than it already possessed." Mount Mercy Associates v. Commissioner, supra. The Court went on to observe that: "It was the partnership that produced the subterfuge we must ignore." Mount Mercy Associates v. Commissioner, supra. Consequently, we sustained respondent's disallowance of the partnership's charitable contribution deductions.

Petitioner was issued Schedules K-1 for the years in issue, reflecting, among other items, his distributive shares of the partnership's charitable deductions. Petitioner gave these to his tax return preparer. Petitioner deducted $16,277 in 1985 and $15,626 in 1986 as his share of Mount Mercy's charitable deductions.

As a result of our decision in Mount Mercy Associates v. Commissioner, supra, respondent disallowed petitioner's claimed charitable contribution deductions. The corresponding

deficiencies, plus interest, were assessed, and then paid by petitioner.

With respect to the claimed charitable contribution deductions, respondent determined that petitioner is liable for additions to tax for negligence under section 6653(a) for 1985 and 1986.

Section 6653(a)(1) (section 6653(a)(1)(A) for 1986) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) (section 6653(a)(1)(B) for 1986) provides for an addition to tax in the amount of 50 percent of the interest payable on the portion of the underpayment of tax attributable to negligence.

Negligence is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden to prove that respondent's determinations are in error. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Reasonable and good faith reliance on the advice of an accountant or attorney may offer relief from the imposition of the negligence addition. United States v. Boyle, 469 U.S. 241, 250-251 (1985). However, reliance on professional advice is not an absolute defense to negligence, but rather a factor to be

considered. <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence. <u>Goldman v. Commissioner</u>, 39 F.3d 402, 408-409 (2d Cir. 1994), affg. T.C. Memo. 1993-480; <u>LaVerne v. Commissioner</u>, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. <u>Cowles v. Commissioner</u>, 949 F.2d 401 (10th Cir. 1991).

Our focus in this case is only with respect to the charitable contributions deductions claimed by petitioner, which were part of the Mount Mercy partnership transaction.

Petitioner asserts that he is not liable for the additions to tax under section 6653 because of reasonable, good faith reliance on professional advice, which he received from Arnold R. Petralia (Petralia), an attorney.

Petralia is an attorney with offices in Rochester, New York. The parties stipulated that Petralia is an attorney with expertise in tax law.

In 1985, Petralia was retained by the Mount Mercy partnership to write the Memorandum, including the portions relating to the charitable contribution deductions. Petralia and his firm were to answer the tax questions of potential investors. Petralia was paid by Mount Mercy for his legal services. Petralia was not a salesman for the partnership and did not

receive any other compensation for the sale of interests in the partnership.

Petralia also was a limited partner in Mount Mercy. As a limited partner, Petralia had an interest in seeing that the partnership would be fully subscribed. According to Petralia, one of the special limited partners could have brought in enough New York City area investors to fully subscribe the partnership. Petralia had to fight to get available units for the Rochester investors he would be bringing into the partnership.

Petralia discussed the Mount Mercy partnership with petitioner and other investors. Petralia did not offer any significant opinion on the validity of the contemplated charitable contribution deductions beyond what was stated in the Memorandum. Petitioner was aware of Petralia's relationship with Mount Mercy at the time of these discussions. Petralia did not charge petitioner for legal or tax advice pertaining to his discussions regarding Mount Mercy, because according to Petralia, that would have constituted a conflict of interest with his work for Mount Mercy.

Petralia stated he had done legal work for petitioner and his partner. The parties stipulated that Petralia was outside counsel for petitioner's business, Flexseal Packaging, providing a wide range of legal services to the business and its principals since 1980.

It is obvious from the above that Petralia considered

himself the attorney for Mount Mercy in every respect insofar as the partnership aspects were concerned. Petralia's response to petitioner with respect to the partnership was consistent with his obligations to his client, Mount Mercy. Where an adviser is so closely tied to a promoter, and the taxpayer knows of this, we do not believe the taxpayer received independent advice. Cf. Horn v. Commissioner, 90 T.C. 908 (1988). Petralia perceived there was the possibility of a conflict and did not offer any significant opinion beyond that in the Memorandum. The Court of Appeals for the Second Circuit has stated that a party "cannot reasonably rely for professional advice on someone they know to be burdened with an inherent conflict of interest." Goldman v. Commissioner, supra (this is the circuit to which an appeal in this case will lie).

Petitioner, a successful businessman, was a sophisticated, aggressive investor. Petitioner reported wage income of $410,089 and $340,559 in 1985 and 1986, respectively. He deducted partnership losses of $175,395 and $205,973 from a number of partnerships for those years, respectively. It appears to us that petitioner was familiar with partnership transactions.

Petitioner reviewed the Memorandum and the Investor Analysis. With all the warnings in the Memorandum, some of which we have set forth, it is clear that the purported charitable deduction was dubious at best and might have to be defended in court. Yet petitioner did not hesitate to take advantage of what

he termed in his testimony a "nice extra". Petitioner was willing to take advantage of this nice extra to reduce his tax liability despite the numerous warnings in the Memorandum. This Court has referred to that nice extra as a subterfuge. We find that the Memorandum advertised improbable tax advantages with respect to the charitable contribution.

Petitioner actually paid $7,500 in 1985 and $12,018.73 in 1986 for his partnership share. For those 2 years, he deducted $16,277 and $15,626 as cash contributions on the Schedules A of the respective returns. At his tax bracket, these specific deductions almost paid for his investment in the partnership during the 2 years in issue.

Moreover, petitioner is a sophisticated businessman who, on his own, had reason to doubt whether the charitable contribution deductions were proper deductions. Instead, petitioner admittedly considered the deductions a little extra tax benefit. We believe petitioner knew that the deductions were at the least problematic. For all the foregoing reasons, we find that petitioner is liable for the negligence additions to tax for 1985 and 1986.

We turn to the question of whether petitioner is liable for the addition to tax for a substantial understatement of income tax under section 6661(a) for 1985. Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of tax.

An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). In general, if a taxpayer had substantial authority for his tax treatment of the item in question, or if the taxpayer adequately disclosed the tax treatment of the item on his return, then the taxpayer may escape liability for the addition to tax with respect to that liability. Sec. 6661(b)(2)(B). However, if the item in question is attributable to a tax shelter, the substantial authority exception will apply only if there was substantial authority for the treatment of the item on the return and the taxpayer reasonably believed that the treatment of the item was more likely than not the proper treatment. Sec. 6661(b)(2)(B) and (C). Petitioner bears the burden to prove that respondent's determination is in error. Rule 142(a).

It is clear from the record that a substantial understatement exists for 1985. Petitioner appears to concede that there was no substantial authority for the treatment of the charitable contribution on his 1985 return. Rather, petitioner argues that respondent abused his discretion by failing to waive the addition to tax for a substantial understatement of tax liability.

Section 6661(c) provides that the Secretary may waive all or part of the addition to tax under section 6661(a) "on a showing by the taxpayer that there was reasonable cause for the

understatement * * * and that the taxpayer acted in good faith."
The denial of a waiver under section 6661(c) is reviewable by the
Court, and the appropriate standard of review is whether
respondent has abused his discretion in not waiving the addition
to tax. <u>Mailman v. Commissioner</u>, 91 T.C. 1079, 1083 (1988).

We have found that petitioner failed to prove that he acted
reasonably in claiming the charitable loss deduction in 1985. On
the record before us, we further find that, assuming arguendo
that petitioner sought a waiver under section 6661(c), he has not
established that respondent abused his discretion in not granting
any such request.

Based on the record before us, we find that petitioner has
failed to satisfy his burden of proving that he had substantial
authority for claiming on his 1985 return the charitable
deduction of $16,277 with respect to Mount Mercy. He has also
failed to prove that that return position was more likely than
not the proper treatment. In addition, assuming arguendo that
petitioner requested a waiver under section 6661(c), petitioner
has failed to prove that respondent abused his discretion in not
granting any such request. Accordingly, we sustain respondent's
determination imposing the addition to tax under section 6661(a)
for 1985.

To reflect the foregoing,

<u>Decision will be entered for</u>
<u>respondent</u>.