T.C. Memo. 2000-153

UNITED STATES TAX COURT

STEPHEN KOWALCHUK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1434-95.                          Filed May 5, 2000.

Stephen Kowalchuk, pro se.

Louise R. Forbes, for respondent.

MEMORANDUM OPINION

POWELL, Special Trial Judge:  Respondent determined that
petitioner is liable for additions to tax under sections
6653(a)(1) and 6659 in the respective amounts of $199 and $844
for the taxable year 1982.[1]  In addition, respondent also
determined that petitioner is liable for the addition to tax
under section 6653(a)(2) in the amount of 50 percent of the

_____

[1]     Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

interest due on a $3,987 deficiency for 1982.  The issues are whether petitioner is liable for these additions to tax. Petitioner resided in Boca Raton, Florida, at the time he filed the petition in this case.

The facts may be summarized as follows.

A.  Background

This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling group of cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993).  It is stipulated that the underlying transactions involving the Sentinel Recyclers in the present case are substantially identical to the transactions in Provizer v. Commissioner, supra.  The facts concerning the transactions as found in Provizer v. Commissioner, supra, are as follows.

Packaging Industries Group, Inc. (PI), manufactured and sold six Sentinel Recyclers to Ethynol Cogeneration, Inc. (ECI), for $981,000 each.  ECI, in turn, resold the recyclers to F&G Equipment Corp. (F&G Corp.) for $1,162,666 each.  F&G Corp. leased the recyclers to the Clearwater Group partnership, which then licensed the recyclers to First Massachusetts Equipment Corp. (FMEC), which sublicensed them back to PI.  PI allegedly sublicensed the recyclers to entities (the end-users), which would use them to recycle plastic scrap.  The sublicense

agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for payment from FMEC based on the quality and amount of recycled scrap. All of the foregoing transactions were executed simultaneously.

The sale of the recyclers from PI to ECI was financed with nonrecourse notes. Approximately 7 percent of the sales price of the recyclers sold by ECI to F&G Corp. was paid in cash, and the remainder was financed through notes. The notes provided that 10 percent of the amount thereof was recourse but that the recourse portion was due only after the nonrecourse portion had been paid in full. All of the monthly payments required among the entities in the above transactions offset each other.

In Provizer v. Commissioner, supra, we found that the market value of a Sentinel Recycler in 1981 did not exceed $50,000 and that the nuts and bolts, or manufacturing, cost was $18,000. Other recycling machines were commercially available during the years in issue in Provizer v. Commissioner, supra.

B. Petitioner's Introduction to Plastics Recycling

Petitioner is a civil engineer by training, and during 1982 he was a self-employed real estate broker. A personal friend and business associate, Ira Sullivan (Mr. Sullivan), gave petitioner a prospectus for SAB Recycling Associates (SAB), a limited partnership, formed "to exploit steam chest molded expanded polystyrene recycling equipment (the 'Sentinel EPS Recyclers')."

SAB purported to lease four recyclers manufactured by PI. The prospectus stated that the projected tax benefits for a $50,000 investor were investment and energy tax credits in the amount of $81,529 and tax deductions in the amount of $38,768 in the year of the investment.

In reading the prospectus petitioner noticed that Samuel Z. Burstein[2] had written a favorable analysis of the recyclers manufactured by PI. Petitioner had known Mr. Burstein in college and considered him to have "a fabulous reputation." Petitioner, however, did not contact Mr. Burstein.

Petitioner has no knowledge concerning the plastics industry and/or plastics recycling. Petitioner never saw one of the recyclers and did not understand how the machinery worked. He essentially relied on Mr. Sullivan, but, as far as petitioner knew, Mr. Sullivan had no knowledge of how the process worked. Petitioner also relied on John Masak (Mr. Masak), but Mr. Masak had no experience in plastics recycling. In reading the prospectus, petitioner noticed that PI had no experience in manufacturing and operating plastics recyclers. When there was no financial return from the partnership, petitioner never contacted the general partner to find out why the investment did not generate the profits projected in the prospectus. Even

---

[2] In the transcript, this name is spelled Bernstein; in the prospectus, however, the name is spelled Burstein.

though he was a engineer by training, petitioner did no research with respect to whether there were comparable recyclers and what were the value of the machines.

C.  Petitioner's Interest in SAB and the Tax Returns

In 1982, petitioner invested $5,500 in Overview Associates (Overview), a partnership, which in turn had a 19.974705-percent interest in SAB.  On its 1982 partnership return, SAB reported that each of the four recyclers had a basis of $1,750,000 and that its bases for the purposes of the investment and business energy tax credits were $7 million.  In Provizer v. Commissioner, supra, we found that of the $7 million only 7 percent was paid in cash.  Overview, the second tier-partnership, reported its aliquot share of the tax credits and deductions.  On his 1982 Federal income tax return, petitioner claimed an ordinary loss of $4,298 and reported a $44,841 basis eligible for the investment tax credit upon which an investment tax credit of $2,814 was claimed by petitioner.

SAB was a so-called TEFRA partnership to which the provisions of sections 6221 through 6233 apply.  On August 18, 1993, this Court entered a decision in SAB Recycling Associates 1982 v. Commissioner, docket No. 4504-92.  Based on the decision in that case, respondent issued a notice of deficiency for so-called affected items to petitioner for the additions to tax

under section 6653(a) for negligence and the valuation overstatement addition to tax under section 6659.

## Discussion

This case is one of many cases involving additions to tax resulting from the plastics recycling scheme. See, e.g., Grelsamer v. Commissioner, T.C. Memo. 1996-399, affd. without published opinion sub nom. Morgan v. Commissioner, 138 F.3d 957 (11th Cir. 1998). Except for a few cases that involved exceptional circumstances, the Court has upheld the imposition of the additions to tax. See Grelsamer v. Commissioner, supra at n.2. This case is similar to the many cases that have fallen on the other side of the line.

### A. Section 6653(a)--Negligence

In a notice of deficiency for 1982 respondent determined that petitioner is liable for the additions to tax for negligence under section 6653(a)(1) and (2). Petitioner has the burden of proving that respondent's determinations of these additions to tax are erroneous. See Rule 142(a); Goldman v. Commissioner, 39 F.3d 402, 407 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax equal

to 50 percent of the interest payable with respect to the portion of the underpayment attributable to the negligence or intentional disregard of rules or regulations.

Negligence is defined as the failure to exercise the due care that a "reasonable and prudent" person would employ under the circumstances. Goldman v. Commissioner, supra at 407; Neely v. Commissioner, 85 T.C. 934, 947 (1985).

In Provizer v. Commissioner, supra, this Court found that each Sentinel Recycler had a fair market value not in excess of $50,000 and that the Clearwater Group transaction was a sham because it lacked economic substance and a business purpose. In reaching the conclusion that the transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel Recycler. It is stipulated that the SAB transactions are substantially similar, and petitioner, therefore, agrees that the same flaws existed with SAB.

Petitioner essentially contends that the additions to tax for negligence should not apply because he was not a sophisticated investor. Petitioner may not be a sophisticated investor, but, even if a taxpayer is an unsophisticated investor, that taxpayer is not relieved of the requirement to use ordinary care and prudence. The pertinent facts here are that petitioner

put $5,500 into a scheme that promised for the first year $3,587[3]
in tax credits and $4,298 in ordinary deductions and reduced his
income tax liability to zero.[4] As far as this record indicates,
petitioner made this investment without the slightest notion of
how the recyclers, in which he had indirectly invested, worked.
Furthermore, as courts have frequently noted, during this period
there was extensive publicity concerning questionable tax
shelters. See, e.g., Freytag v. Commissioner, 89 T.C. 849, 888
(1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868
(1991).

These facts require a "reasonable and prudent" person at
least to seek advice from persons who have knowledge concerning
the investment. The only people with whom petitioner spoke
concerning SAB were Messrs. Sullivan and Masak, and it is agreed
that they had no such expertise. Petitioner, therefore, cannot
deflect his own culpability onto other shoulders.

We also reject petitioner's argument that the small amount
of his investment militated against seeking further information
because of the costs that would have been involved. Having
claimed bogus tax deductions and credits, he must bear
responsibility for his actions. The long and short of the matter

---

[3] Petitioner's 1982 income was such that he claimed only a
credit in the amount of $2,814; the unused portion of the credit,
however, may have been carried back or forward. See sec. 46(b).

[4] Petitioner did have a liability for self-employment taxes.

is that petitioner did not use reasonable and prudent care in investing in and claiming the deductions and credits from this scheme. Respondent's determinations as to the additions to tax under section 6653(a) are sustained.

B.  Section 6659--Valuation Overstatement

Under section 6659 a graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and is "attributable to" a valuation overstatement. Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or adjusted basis) of the property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. See sec. 6659(c). If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. See sec. 6659(b).

In the notice of deficiency, respondent determined that petitioner is liable for the section 6659 addition to tax on the portion of his underpayment attributable to valuation overstatement. Petitioner has the burden of proving that respondent's determination of the section 6659 addition to tax is erroneous. See Rule 142(a); Luman v. Commissioner, supra at 860-861.

Petitioner received tax benefits, including investment and business energy tax credits, based on a purported value of

$1,750,000 for each recycler. Petitioner concedes that the fair market value of a recycler in 1982 was not in excess of $50,000. Therefore, if petitioner's underpayment of tax is attributable to such valuation overstatement, petitioner is liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the tax benefits claimed with respect to the partnership.

Except for his petition, petitioner makes no argument concerning the section 6659 addition to tax. It is clear that the underpayment of tax resulted directly from the grossly overstated value of the recycling machinery. Respondent's determination with respect to the section 6659 addition to tax is sustained.

Decision will be entered for respondent.