T.C. Summary Opinion 2001-105

UNITED STATES TAX COURT

RODNEY M. FUJIYAMA AND VICKI ANN FUJIYAMA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16533-99S.                     Filed July 23, 2001.

Rodney M. Fujiyama and Vicki Ann Fujiyama, pro se.

<u>Brian M. Harrington</u>, for respondent.


MARVEL, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 in effect at the time the petition was
filed.[1]  The decision to be entered is not reviewable by any
other court, and this opinion should not be cited as authority.

---

[1]All subsequent section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioners are liable for an addition to tax for negligence under section 6653(a)(2) for 1982. The only issue for decision is whether petitioners are liable for the addition to tax for negligence pursuant to section 6653(a)(2) for 1982 in the amount of 50 percent of the interest due on the underlying deficiency of $6,479,[2] which respondent computed in connection with the disallowance of research and development expenditures deducted in 1982 by Jojoba Research Partners, Hawaii, a limited partnership.

## Background

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts by this reference. Petitioners resided in Honolulu, Hawaii, on the date the petition was filed. Hereinafter, references to petitioner are to Rodney M. Fujiyama.

Petitioner graduated from law school and has been licensed to practice law since 1970. Petitioner's legal practice focuses primarily on business transaction planning. Petitioner does not practice tax law and has very little tax experience. When one of petitioner's clients requires tax advice, petitioner engages the services of a national or local accounting firm to assist him.

---

[2]In his notice of deficiency, respondent determined that petitioners are liable for a negligence penalty in the amount of 50 percent of the interest due on $13,367. Respondent conceded in his trial memorandum that the penalty should be limited to 50 percent of the interest due on $6,479.

Investment in Jojoba Research Partners, Hawaii

In 1982, petitioner's accountant, Robert Mihara, introduced petitioner to an investment opportunity in a limited partnership known as Jojoba Research Partners, Hawaii (Jojoba). Jojoba had entered into agreements with U.S. Agri-Research and Development Corp. (Agri-Research) under which Agri-Research would provide agricultural research and development services with respect to the growing of jojoba plants. In connection with its activities, Jojoba planned to deduct research and development expenditures under section 174, which, it expected, would generate tax benefits for its investors.

Petitioner believes, but is not certain, that he reviewed a private placement memorandum (PPM) and a tax opinion letter in connection with his proposed investment in Jojoba.[3] He also consulted his accountant, Mr. Mihara.

The PPM, dated October 28, 1982, stated: "THIS OFFERING INVOLVES A HIGH DEGREE OF RISK". The PPM also stated:

> PROSPECTIVE INVESTORS ARE CAUTIONED NOT TO CONSTRUE THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS AS CONSTITUTING LEGAL OR TAX ADVICE. * * * INVESTORS ARE URGED TO CONSULT THEIR OWN COUNSEL AS TO ALL MATTERS CONCERNING THIS INVESTMENT.

> PRIOR TO THE SALE OF ANY UNITS, EACH PURCHASER AND/OR HIS OFFEREE REPRESENTATIVE SHALL HAVE THE OPPORTUNITY TO ASK QUESTIONS OF THE GENERAL PARTNER

---

[3]Petitioner conceded that, even if he did review the PPM before making his investment, he probably did not read the entire document.

CONCERNING ANY ASPECT OF THE INVESTMENT DESCRIBED HEREIN.  EACH INVESTOR MAY OBTAIN ANY ADDITIONAL INFORMATION NECESSARY TO VERIFY THE ACCURACY OF THE INFORMATION CONTAINED IN THIS MEMORANDUM TO THE EXTENT THAT THE GENERAL PARTNER POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE.

*     *     *     *     *     *     *

NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED OR SHOULD BE INFERRED WITH RESPECT TO THE ECONOMIC RETURN OR TAX ADVANTAGES WHICH MAY ACCRUE TO THE INVESTORS IN THE UNITS.

EACH PURCHASER OF UNITS HEREIN SHOULD AND IS EXPECTED TO CONSULT WITH HIS OWN TAX ADVISOR AS TO THE TAX ASPECTS.

In addition to the general warnings, the PPM described the risk factors with respect to the projected Federal income tax consequences of an investment in Jojoba as follows:

The General Partner anticipates that a substantial portion of the capital contributions of the Limited Partners to the Partnership will be used for research and experimental expenditures of the type generally covered by Section 174 of the Code.  However, prospective investors should be aware that there is little published authority dealing with the specific types of expenditures which will qualify as research or experimental expenditures within the meaning of Section 174, and most of the expenditures contemplated by the Partnership have not been the subject of any prior cases or administrative determinations.

*     *     *     *     *     *     *

No ruling by the Service has been or will be sought regarding deductibility of the proposed expenditures under Section 174 of the Code.

The PPM referred prospective investors to a November 8, 1992, tax opinion letter prepared by the law firm of Caplan & Resnick and addressed to Jojoba's general partner (Caplan

letter). The Caplan letter discussed various Federal income tax principles and opined regarding the application of those principles to the Jojoba investment. Caplan & Resnick based its opinion on the representations made by Jojoba's general partner, which the firm claimed it independently verified by personally interviewing officers of Agri-Research, visiting a typical experimental jojoba plantation, and reviewing various documents, including the PPM, the research and development agreement, the license agreement, and documentation concerning the acquisition of rights to the use of real property upon which the research would be conducted. The Caplan letter specifically addressed the deductibility of research and development expenditures under section 174 and concluded:

> Because of the scarcity of judicial opinions and legislative enactments regarding section 174 and because * * * [Jojoba] may incur expenses which are not presently contemplated, it is not possible to guarantee the deductibility of certain expenditures as research and development expenses. The General Partner intends to conduct the * * * [Jojoba] business such that, to the extent possible, substantially all * * * [Jojoba's] expenditures for research and development qualify under section 174.

Before making the investment in Jojoba, petitioner discussed with Mr. Mihara Jojoba's profit potential and the research and development deduction that Jojoba anticipated claiming. Although Mr. Mihara had no expertise regarding jojoba as a marketable commodity, research and development expenditures generally, or the requirements of section 174 when he brought

Jojoba to petitioner's attention, he nevertheless assured petitioner there would be no problem with the deduction. Mr. Mihara relied upon representations made by Jojoba representatives that Jojoba's activities qualified as research and development and that investors would "be able to take all these deductions and get all these tax benefits." Solely on the basis of those representations, Mr. Mihara concluded that Jojoba was a legitimate research and development activity. Neither he nor petitioner did any independent research or analysis or consulted with any experts regarding the Jojoba investment.[4]

Petitioner did not inquire regarding Mr. Mihara's involvement with Jojoba or his qualifications to advise petitioner competently regarding the proposed investment. In fact, Mr. Mihara was the accountant for, and an investor in, Jojoba.

Shortly after petitioner discussed Jojoba with Mr. Mihara, petitioner made the minimum investment in Jojoba. Petitioner paid $5,000 by check and signed a promissory note for $9,250 with 10 percent interest per year in exchange for five limited partnership units. Petitioner also executed a limited guaranty

---

[4]Mr. Mihara had no personal knowledge regarding the jojoba plantation, but he did receive occasional progress letters from Agri-Research regarding the activities allegedly being conducted on the jojoba plantation. Petitioner may have seen some of these progress letters but, at the time of trial, he did not recall whether he received any specific letter.

agreement with Agri-Research and Jojoba guaranteeing, to the extent of the promissory note balance, Jojoba's liability to Agri-Research under the research and development agreement.

Petitioners' 1982 Federal Income Tax Return

For the taxable year 1982, Jojoba allocated an ordinary loss of $12,971 to petitioner, as reflected in his 1982 Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., issued by Jojoba, which petitioners deducted on their 1982 joint Federal income tax return.

On October 18, 1993, the tax matters partner of Jojoba entered into a stipulation with respondent agreeing to be bound by this Court's decision in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. The facts regarding the underlying deficiency in Utah Jojoba I Research are substantially identical to those in this case. In Utah Jojoba I Research, we held that the partnership was not entitled to deduct its losses for research and development expenditures under section 174. On June 17, 1998, we entered a decision against Jojoba, the partnership involved in this case, disallowing the research and expense deduction claimed for 1982.

On August 6, 1999, respondent issued a notice of deficiency to petitioners for 1982 in which he determined that petitioners are liable for an addition to tax for negligence pursuant to

section 6653(a)(2) in connection with a research and development deduction disallowed at the partnership level.

## Discussion

Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable with respect to the portion of underpayment attributable to negligence or intentional disregard of rules and regulations for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax. For purposes of section 6653, negligence is defined as "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)); see Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person. Zmuda v. Commissioner, supra.

The Commissioner's decision to impose the negligence penalty is presumptively correct. Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; Hansen v. Commissioner, 820 F.2d 1464, 1469 (9th

Cir. 1987). The taxpayer has the burden of proving that the Commissioner's determination is erroneous and that he did what a reasonably prudent person would have done under the circumstances. Rule 142(a); Hansen v. Commissioner, supra; Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

At trial,[5] petitioner claimed that he reasonably relied on representations made in the offering materials and on his accountant, whom he described as a knowledgeable and experienced tax adviser. Petitioner argued that he did not need to independently investigate the investment because, as an investor of moderate means, he was entitled to rely upon the offering materials and the expertise of his accountant,[6] citing Heasley v. Commissioner, 902 F.2d 380, 383-384 (5th Cir. 1990), revg. T.C. Memo. 1988-408. In support of his position, petitioner also cited United States v. Boyle, 469 U.S. 241, 250-251 (1985), in which the United States Supreme Court stated:

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability

---

[5]The parties agreed not to submit posttrial briefs in this case. After the trial, petitioner presented a closing argument, and respondent submitted a memorandum of authorities with the consent of petitioner.

[6]Petitioners also argued that we should abate the interest accrued on the 1982 deficiency. See sec. 6404(e). Petitioners, however, have not complied with the statutory requirements for abatement. Whether petitioners are entitled to abatement of interest is not properly before us. See id.

exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions. [Citation omitted.]

Respondent argued that petitioner was negligent and that petitioner did not have a reasonable basis for his reporting position regarding Jojoba. We agree that petitioner's reliance on the offering materials and on the advice of his accountant is not an adequate defense.

It is well settled that a taxpayer's reliance upon offering materials prepared in connection with the sale of an investment or upon the representations of investment insiders and promoters is not reasonable. Goldman v. Commissioner, 39 F.3d 402 (2d Cir. 1994) (reliance on representations by insiders, promoters, or offering materials is an inadequate defense to negligence), affg. T.C. Memo. 1993-480; Becker v. Commissioner, T.C. Memo. 1996-538. In this case, not only was petitioner's reliance on the offering materials not reasonable, but petitioner ignored provisions in the PPM warning him to consult a competent and independent adviser.[7]

_____

[7]The PPM did not make any affirmative statements indicating that the research and development deduction would be allowed by the IRS and, in fact, warned against misconstruing the document
(continued...)

It is equally well settled that, although a taxpayer may avoid liability for the addition to tax under section 6653(a)(2) if he reasonably relies in good faith on a competent professional, United States v. Boyle, supra, "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered", Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). In order to successfully claim he reasonably relied on professional advice, petitioner must demonstrate that the professional on whom he relied had sufficient expertise and knowledge of the pertinent facts to provide informed advice on the subject matter. Id.; Becker v. Commissioner, supra; Sacks v. Commissioner, T.C. Memo. 1994-217, affd. 82 F.3d 918 (9th Cir. 1996); Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995). Petitioner has not demonstrated that Mr. Mihara had either the necessary expertise or the knowledge of pertinent facts to render informed advice on the investment. To the

---

[7](...continued)
as indicating the deduction would be proper. Likewise, the Caplan letter stated that the deduction might be subject to attack by the IRS and that "Several commentators have discussed the potential that the IRS may attack a research and development partnership on the basis that it constitutes a material distortion of income." The Caplan letter also pointed out the lack of judicial opinions and legislative enactments regarding sec. 174 and stressed "it is not possible to guarantee the deductibility of certain expenditures as research and development expenses."

contrary, Mr. Mihara admitted at trial that he did not know much about research and development at the time of the initial investment in Jojoba but, nevertheless, assured petitioner there would not be a problem with the research and development deduction.  See Hansen v. Commissioner, 820 F.2d 1464 (9th Cir. 1987); Glassley v. Commissioner, T.C. Memo. 1996-206.

Petitioner's reliance on Heasley v. Commissioner, supra, is misplaced.  Although an investor "need not pore over every word in a prospectus or in closing documents" before making an investment, he must exercise reasonable care in ascertaining basic information regarding his investment.  Id. at 384.  Unlike the taxpayer in Heasley, petitioner made no effort to verify even the most basic information regarding his investment or to ensure that a competent and independent professional had done so on his behalf.  Moreover, after he made his investment in Jojoba, petitioner failed to monitor his investment.

We find that petitioner's failure to exercise reasonable care in determining whether to invest in Jojoba was negligent and that petitioner's reliance on Mr. Mihara for advice regarding the Jojoba investment was not reasonable.  Accordingly, we hold that petitioners are liable for the addition to tax for negligence under section 6653(a)(2) with respect to a deficiency for 1982 of $6,479.

To reflect the foregoing,

Decision will be entered

under Rule 155.