T.C. Memo. 1997-296


UNITED STATES TAX COURT


IRA S. GREENE AND ROBIN C. GREENE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 32552-85.                    Filed June 30, 1997.


<u>Lanny M. Sagal</u>, for petitioners.

<u>Barry J. Laterman</u>, for respondent.


CONTENTS

                                                        Page
MEMORANDUM FINDINGS OF FACT AND OPINION...................... 2
OPINION OF THE SPECIAL TRIAL JUDGE.......................... 2
FINDINGS OF FACT............................................ 4
  A. The Plastics Recycling Transactions.................... 5
  B. Resource Reclamation Associates....................... 7
  C. Richard Roberts........................................ 9
  D. Petitioners and Their Introduction to Resource
     Reclamation Associates..................................10
OPINION....................................................14
  A. Section 6653(a)--Negligence............................16
     1. The Private Offering Memorandum.....................17

2. Petitioner's Purported Reliance on Advisers...........21
3. Miscellaneous......................................26
4. Conclusion as to Negligence.......................29
B. Section 6659--Valuation Overstatement...................30
1. Concession of the Deficiency......................32
2. Section 6659(e)...................................36

## MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.  All section references are to the Internal Revenue Code in effect for the tax year in issue, unless otherwise indicated.  All Rule references are to the Tax Court Rules of Practice and Procedure.  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, <u>Special Trial Judge</u>:  This case is part of the Plastics Recycling group of cases.  For a detailed discussion of the transactions involved in the Plastics Recycling cases, see <u>Provizer v. Commissioner</u>, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993).  The facts of the underlying transactions and the Sentinel recyclers in this case are substantially identical to those considered in the <u>Provizer</u> case.  In a separate, earlier opinion, this Court denied petitioners' motion for summary judgment.  See <u>Greene v. Commissioner</u>, 88 T.C. 376 (1987).

In a notice of deficiency dated June 21, 1985, respondent determined a deficiency in petitioners' 1981 joint Federal income tax in the amount of $53,202.25. In an answer to the petition, respondent asserted that petitioners are liable for increased interest on the deficiency accruing after December 31, 1984, calculated at 120 percent of the statutory rate under section 6621(c).[1] In an amendment to answer, respondent asserted additions to tax for that year pursuant to section 6659 at the 30-percent rate for valuation overstatement, in the amount of $2,660 under section 6653(a)(1) for negligence, and under section 6653(a)(2) in the amount of 50 percent of the interest due on the underpayment attributable to negligence.

The parties filed a Stipulation of Settled Issues concerning the adjustments relating to petitioners' participation in the Plastics Recycling Program. The stipulation provides:

> 1. Petitioners are not entitled to any deductions, losses, investment credits, business energy investment credits or any other tax benefits claimed on their 1981 tax return as a result of petitioner's participation in Resource Reclamation Associates.

[1] The answer refers to sec. 6621(d). This section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744, and repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989, OBRA 89 sec. 7721(d), 103 Stat. 2400. The repeal does not affect the instant case. For simplicity, we will refer to this section as sec. 6621(c). The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

2. The underpayment in income tax attributable to petitioner's participation in Resource Reclamation Associates is a substantial underpayment attributable to a tax motivated transaction, subject to the increased rate of interest established under I.R.C. §6621(c), formerly section 6621(d).

3. This stipulation resolves all issues that relate to the items claimed on petitioners' 1981 tax return resulting from petitioner's participation in Resource Reclamation Associates, with the exception of petitioners' potential liability for additions to the tax for a valuation overstatement under I.R.C. §6659 and for negligence under the applicable provisions of I.R.C. §6653(a).

4. With respect to the issue of the addition to the tax under I.R.C. §6659, petitioners do not intend to contest the issue of the value of the Sentinel Recycler or the existence of a valuation overstatement on the petitioners' return; however, petitioners preserve their right to argue that the underpayment in tax is not attributable to a valuation overstatement within the meaning of I.R.C. §6659(a)(1), and that even if I.R.C. §6659 is applicable, the Secretary should have waived the addition to tax pursuant to the provisions of I.R.C. §6659(e).

The issues remaining in this case are: (1) Whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1) and (2); and (2) whether petitioners are liable for the addition to tax under section 6659 for underpayment of tax attributable to a valuation overstatement.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference.

A.  The Plastics Recycling Transactions

This case concerns petitioners' investment in Resource Reclamation Associates (Resource), a limited partnership that leased Sentinel expanded polyethylene (EPE) recyclers.  The transactions involving the Sentinel EPE recyclers leased by Resource are substantially identical to those in the Clearwater Group limited partnership (Clearwater), the partnership considered in Provizer v. Commissioner, supra.  Petitioners have stipulated substantially the same facts concerning the underlying transactions as we found in the Provizer case.

In transactions closely resembling those in the Provizer case, Packaging Industries, Inc. (PI), manufactured and sold seven Sentinel EPE recyclers to ECI Corp. for $981,000 each.  ECI Corp., in turn, resold the recyclers to F & G Corp. for $1,162,666 each.  F & G Corp. then leased the recyclers to Resource, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI.  The sales of the recyclers from PI to ECI Corp. were financed with nonrecourse notes.  Approximately 7 percent of the sale price of the recyclers sold by ECI Corp. to F & G Corp. was paid in cash with the remainder financed through notes.  These notes provided that 10 percent of the notes were recourse but that the recourse portion of the notes was only due after the nonrecourse portion, 90 percent, was paid in full.

All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. Although the recyclers were sold and leased for the above amounts under the structure of simultaneous transactions, the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000.

PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC Corp. based on the quality and amount of recycled scrap.

Both Clearwater and Resource leased Sentinel EPE recyclers from F & G Corp. and licensed those recyclers to FMEC Corp. Apart from leasing and licensing seven recyclers instead of six, the underlying transactions involving Resource do not differ in any substantive respect from the Clearwater transactions considered in the Provizer case.

For convenience, we refer to the series of transactions among PI, ECI Corp., F & G Corp., Resource, FMEC Corp., and PI as the Resource transactions. In addition to the Resource transactions, a number of other limited partnerships entered into transactions similar to the Resource transactions, also involving Sentinel EPE recyclers and Sentinel expanded polystyrene (EPS)

recyclers.  We refer to these collectively as the Plastics Recycling transactions.

## B.  Resource Reclamation Associates

Resource is a New York limited partnership that closed on October 15, 1981.  Richard Roberts (Roberts) is the general partner of Resource.

A private placement memorandum for Resource was distributed to potential limited partners.  Reports by F & G Corp.'s evaluators, Dr. Stanley M. Ulanoff (Ulanoff), a marketing consultant, and Dr. Samuel Z. Burstein (Burstein), a mathematics professor, were appended to the offering memorandum.  Both Ulanoff and Burstein invested in the Plastics Recycling transactions.  Burstein also was a client and business associate of Elliot I. Miller (Miller), the corporate counsel to PI.

The Resource offering memorandum states that the general partner will receive fees from Resource in the amount of $40,000. In addition, the offering memorandum provides that the general partner "may retain as additional compensation all amounts not paid as sales commissions or offeree representative fees". According to the offering memorandum, it was anticipated that 10 percent of the proceeds from the offering--$95,000--would be allocated to the payment of sales commissions and offeree representative fees.  Roberts therefore was to receive a minimum of $40,000 and up to $135,000 from Resource.

The offering memorandum lists significant business and tax risk factors associated with an investment in Resource. Specifically, the offering memorandum states: (1) There is a substantial likelihood of audit by the Internal Revenue Service (IRS), and the purchase price paid by F & G Corp. to ECI Corp. probably will be challenged as being in excess of fair market value; (2) Resource has no prior operating history; (3) the general partner has no prior experience in marketing recycling or similar equipment; (4) the limited partners have no control over the conduct of Resource's business; (5) there is no established market for the Sentinel EPE recyclers; (6) there are no assurances that market prices for virgin resin will remain at their current costs per pound or that the recycled pellets will be as marketable as virgin pellets; and (7) certain potential conflicts of interest exist.

Although the offering memorandum represented that the Sentinel EPE recycler was a unique machine, it was not. Several machines capable of densifying low-density materials were already on the market in 1981. Other plastics recycling machines available during 1981 ranged in price from $20,000 to $200,000, including the Foremost Densilator, Nelmor/Weiss Densification System (Regenolux), Buss-Condux Plastcompactor, and Cumberland Granulator. See Provizer v. Commissioner, T.C. Memo. 1992-177.

C.  Richard Roberts

Roberts is a businessman and the general partner in Resource and many other limited partnerships that leased and licensed Sentinel EPE recyclers.  He also is a 9-percent shareholder in F & G Corp., the corporation that leased the recyclers to Resource.  From 1982 through 1985, Roberts maintained the following office address with Raymond Grant (Grant), the sole owner and president of ECI Corp.:

>                    Grant/Roberts
>                    Investment Banking
>                    Tax Sheltered Investments
>                    745 Fifth Avenue, Suite 410
>                    New York, New York  10022

Grant was instrumental in the hiring of Ulanoff as an evaluator of the Plastics Recycling transactions.  The two had met on a cruise.  Roberts and Grant together have been general partners in other investments.

Prior to the Resource transactions, Roberts and Grant were clients of the accounting firm H. W. Freedman & Co. (Freedman & Co.).  Harris W. Freedman (Freedman), a certified public accountant and the named partner in Freedman & Co., was the president and chairman of the board of F & G Corp.  He also owned 94 percent of a Sentinel EPE recycler.  Freedman & Co. prepared the partnership returns for ECI Corp., F & G Corp., and Resource. It also provided tax services to John D. Bambara (Bambara).

Bambara is the 100-percent owner of FMEC Corp., as well as its president, treasurer, clerk, and director.  He, his wife, and his daughter also owned directly or indirectly 100 percent of the stock of PI.

D.  Petitioners and Their Introduction to Resource Reclamation Associates

Petitioners resided in New York, New York, at the time their petition was filed.  Hereafter, reference to petitioner denotes Ira S. Greene.

Petitioner graduated from Syracuse University in 1968 with a B.A. degree in political science.  Three years later he earned a law degree from the New York University (NYU) Law School.  Petitioner specializes in bankruptcy law.  The bulk of his practice prior to the time he invested in Resource involved the liquidation of assets of individuals and small businesses under chapter 7 of the Bankruptcy Code.  Petitioner's wife Robin graduated from the Temple University Law School and specialized in general litigation prior to the time of the investment in Resource.  She was a fourth- or fifth-year associate in the law firm of White & Case in New York City in 1981.

In 1981 petitioner earned in excess of $100,000 for the first time in his career.  On the Schedule C, Profit or Loss From Business or Profession, attached to petitioners' 1981 joint return, petitioner reported gross receipts from his business,

designated "Ira S. Greene", in the amount of $206,332 and a net profit in the amount of $120,185. On a supplemental schedule to Form 4726, Maximum Tax on Personal Service Income, petitioner reported total wages earned for 1981 in the amount of $6,000; his wife Robin reported total wages earned in the amount of $40,594. Petitioners' combined wages and Schedule C net earned income for 1981 totaled $166,779.

Petitioner acquired a 2.605-percent limited partnership interest in Resource for $25,000 in 1981. As a result of his investment in Resource, on their 1981 joint Federal income tax return petitioners claimed an operating loss in the amount of $20,533 and investment tax and business energy credits totaling $42,402. Respondent disallowed in full petitioners' claimed loss and investment tax and business energy credits related to Resource.

Petitioner learned of the Plastics Recycling transactions and Resource in 1981 from another bankruptcy attorney, Leon Marcus (Marcus). Marcus informed petitioner that Resource was a tax-advantaged investment or tax shelter and that he was investing in a Plastics Recycling transaction. Petitioner was "flattered" to be approached by Marcus. He described Marcus as the senior partner in a "small law firm * * * [petitioner] was at". Petitioner claims that Marcus "had a reputation of a very

high business acumen who could perceive value in businesses, value in deals, * * * [and] value in future businesses".  Marcus informed petitioner that offering materials were available for review and that a limited partnership unit sold for $50,000.  Petitioner told Marcus that he was unwilling to invest $50,000.  A few days later Marcus again approached petitioner and informed him that he could purchase half of a limited partnership unit for $25,000.

Petitioner reviewed the Resource offering memorandum over the course of several days.  He testified that he did not understand certain portions of it and did not thoroughly review the section disclosing potential conflicts of interest.  The credentials of F & G Corp.'s evaluators, Ulanoff and Burstein, allegedly impressed petitioner.  When he read Burstein's report, petitioner recalled:  "I didn't really understand what he was talking about most of the time, but I could read the conclusions."  Petitioner claims he thought that Ulanoff and Burstein were independent experts.  He could not recall reading the disclosure in the offering memorandum that Burstein was a client and business associate of Miller's.  The offering memorandum disclosed that Miller was the General Counsel for PI and a 9.1-percent shareholder of F & G Corp., and that he represented Grant, Roberts, and several shareholders of F & G

Corp. In addition, the offering memorandum disclosed that Miller "will receive substantial additional compensation for representing PI and FMEC in connection with this transaction."

Petitioner understood that the law firm that authored the tax opinion appended to the offering memorandum had a good reputation. He also recognized the name of a former tax professor from the NYU Law School in the firm's letterhead. Petitioner says he assumed that the law firm had performed significant due diligence.

After reviewing the offering memorandum, petitioner asked his certified public accountant, Robert Hefter (Hefter) of Mac Albert Bank & Co. CPA's, to review it as well. Petitioner testified that Hefter told him that "it appeared to be sound", that the tax opinion "appeared to be accurate", and that "it appeared to be a valid investment based on the documents." Petitioner proceeded to invest in Resource without further investigation. He could not recall whether he discussed the investment with his wife Robin, or even when she became aware of it. Petitioner could only suggest that his wife "would have been aware" of the investment sometime prior to signing their 1981 tax return, which was prepared by Hefter.

Petitioner and his wife Robin do not have any education or experience in plastics materials or plastics recycling. He did

not personally investigate the value or uniqueness of the Sentinel EPE recycler. Petitioner did not believe he was qualified to do so and "wouldn't know where to start." He did not retain an independent plastics recycling expert to conduct such an investigation. Petitioner did not learn whether Marcus had any expertise or experience in plastics materials or plastics recycling; or how Marcus became aware of the Plastics Recycling transactions; or what Marcus did, if anything, to investigate Resource or the Plastics Recycling transactions; or whether Marcus received a commission as a result of petitioner's investment. Petitioner never made a profit from his investment in Resource. Neither Marcus, Hefter, nor petitioner's wife Robin testified at the trial of this case.

## OPINION

We have decided a large number of the Plastics Recycling group of cases. Provizer v. Commissioner, T.C. Memo. 1992-177, concerned the substance of the partnership transaction and also the additions to tax. See also Kaliban v. Commissioner, T.C. Memo. 1997-271; Sann v. Commissioner, T.C. Memo. 1997-259, and cases cited therein. The majority of these cases, like the present case, raised issues regarding additions to tax for negligence and valuation overstatement. We have found the

taxpayers liable for such additions to tax in all but one of the opinions to date on these issues.

In Provizer v. Commissioner, supra, a test case for the Plastics Recycling group of cases, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers.

Although petitioners have not agreed to be bound by the Provizer opinion, they have stipulated that the investment in the Sentinel EPE recyclers in this case is similar to the investment described in Provizer v. Commissioner, supra. The underlying transactions in this case, and the Sentinel EPE recyclers purportedly leased by Resource, are the same type of transactions and same type of machines considered in Provizer v. Commissioner, supra.

Based on the entire record in this case, including the extensive stipulations, testimony of respondent's experts, and petitioner's testimony, we hold that the Resource transaction herein was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Respondent is sustained on the question of the underlying deficiency. We note that petitioners have explicitly conceded this issue in the stipulation of settled issues filed shortly before trial. The record plainly supports respondent's determination regardless of that concession. For a detailed discussion of the facts and the applicable law in a substantially identical case, see Provizer v. Commissioner, supra.

A. Section 6653(a)--Negligence

Respondent asserted the additions to tax for negligence under section 6653(a)(1) and (2) for 1981 in the first amendment to answer. Because these additions to tax were raised for the first time in the amended answer, respondent has the burden of proof. Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994); Bagby v. Commissioner, 102 T.C. 596, 612 (1994).

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable with respect to the portion

of the underpayment attributable to negligence or intentional disregard of rules or regulations.

Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). When considering the negligence addition to tax, we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers, as well as the manner in which they approached their investment. McPike v. Commissioner, T.C. Memo. 1996-46. Compare Spears v. Commissioner, T.C. Memo. 1996-341 with Zidanich v. Commissioner, T.C. Memo. 1995-382.

Petitioners maintain that they were reasonable in claiming a loss deduction and investment tax and business energy credits with respect to Resource. Petitioner argues that he reasonably relied upon the offering memorandum as well as Marcus and Hefter as qualified advisers on this matter.

1. The Private Offering Memorandum

Petitioner contends that he "carefully reviewed" and relied upon the Resource offering memorandum, particularly the reports of F & G Corp.'s evaluators and the tax opinion appended to the offering memorandum. However, in view of petitioner's failure to

learn or properly evaluate important facts about Resource or the Plastics Recycling transactions in general that were disclosed in the offering memorandum, we are not convinced that he carefully reviewed the offering memorandum, or that he placed a great deal of reliance, if any, upon the representations therein.

The Resource offering memorandum disclosed 8 tax and 12 business risk factors associated with an investment in Resource. With respect to the opinion letter of counsel, the offering memorandum stressed that "prospective investors are not permitted to rely upon the advice contained therein", and that "OFFEREES MUST RELY UPON THEIR OWN PROFESSIONAL ADVISERS WITH RESPECT TO THE TAX BENEFITS AND TAX RISKS RELATING TO AN INVESTMENT IN THE PARTNERSHIP." The offering memorandum also warned that there was a substantial likelihood of audit and that "THE PURCHASE PRICE OF THE SENTINEL RECYCLERS TO BE PAID BY F & G [CORP.] * * * WILL PROBABLY BE CHALLENGED * * * AS BEING IN EXCESS OF THE FAIR MARKET VALUE THEREOF". The import of this particular tax risk factor was explained in the next paragraph as follows: "Such purchase price is the basis for computing the regular investment and energy tax credits to be claimed by the Partnership."

Among the disclosed business risk factors were the following: (1) The Partnership had no operating history; (2) management of the Partnership's business was dependent upon the general partner, who had no experience in marketing recycling equipment and who was required to devote only such time to the

Partnership as he deemed necessary; (3) the limited partners had no right to take part in, or interfere in any manner with, the management or conduct of the business of the Partnership; (4) there was no established market for the Sentinel recyclers; (5) although competitors were purportedly not marketing comparable equipment, and the Sentinel recyclers purportedly involved "carefully guarded trade secrets", PI did "not intend to apply for a patent for protection against appropriation and use by others."

Petitioner testified that he did not understand portions of the offering memorandum and that he "didn't really understand what * * * [Burstein] was talking about most of the time" in his report appended thereto. He also testified that he could not recall reading that Burstein was a business associate and client of Miller, the corporate counsel to PI. Petitioner denied focusing on the section of the offering memorandum detailing the various conflicts of interest. Petitioner did not discuss the offering memorandum with Marcus. Instead, petitioner asked his accountant to review the offering memorandum. However, the record does not disclose how thoroughly the accountant reviewed the offering memorandum or whether he did anything beyond reading it. The record includes no information concerning the extent and nature of the accountant's tax background or whether he had any experience with tax-advantaged investments, tax shelters, partnerships, or the plastics industry. Petitioner failed to

provide significant information about his accountant's qualifications as an adviser concerning the transaction in issue.

The projected tax benefits in the offering memorandum exceeded petitioners' investment. According to the offering memorandum, for each $50,000 investor, the projected first-year tax benefits were investment tax credits in the amount of $84,813, plus deductions in the amount of $40,586. As a result of petitioners' $25,000 investment in Resource, petitioners claimed an operating loss in the amount of $20,533 and investment tax and business energy credits totaling $42,402 on their 1981 return. The direct reduction in petitioners' 1981 Federal income tax, from the investment tax credits alone, was 170 percent of their cash investment. Therefore, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, petitioners never had any money in * * * [Resource]."

Petitioner's failure to seek explanations of the portions of the offering memorandum that he did not understand, and his indifference to the warnings and caveats contained therein, indicate that he did not rely upon the offering memorandum to any significant extent. Particularly in view of the disproportionately large tax benefits claimed on petitioners' 1981 Federal income tax return, relative to the dollar amount invested, further investigation of the Resource transaction clearly was required. A careful consideration of the materials

in the offering memorandum, especially the discussions of high writeoffs and risk of audit, should have alerted a prudent and reasonable investor to the questionable nature of the promised deductions and credits.  See Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; Sacks v. Commissioner, T.C. Memo. 1994-217, affd. 82 F.3d 918 (9th Cir. 1996).  A reasonably prudent person would not conclude without substantial investigation that the Government was providing tax benefits so disproportionate to the taxpayers' investment of their own capital.

### 2.  Petitioner's Purported Reliance on Advisers

Petitioner contends that he reasonably relied upon Marcus and Hefter as qualified advisers on this matter.

A taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if he or she reasonably relied on competent professional advice.  United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered.  Freytag v. Commissioner, supra.  For reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the taxpayer must show that the professional had the expertise and knowledge of the pertinent facts to provide informed advice on the subject matter.  David v. Commissioner, 43

F.3d 788, 789-790 (2d Cir. 1995), affg. T.C. Memo. 1993-621; Goldman v. Commissioner, 39 F.3d 402 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Freytag v. Commissioner, supra; Buck v. Commissioner, T.C. Memo. 1997-191; Sacks v. Commissioner, supra; Kozlowski v. Commissioner, T.C. Memo. 1993-430, affd. without published opinion 70 F.3d 1279 (9th Cir. 1995); see also, e.g., Kaliban v. Commissioner, T.C. Memo. 1997-271; Sann v. Commissioner, T.C. Memo. 1997-259; Friedman v. Commissioner, T.C. Memo. 1996-558; Gollin v. Commissioner, T.C. Memo. 1996-454; Stone v. Commissioner, T.C. Memo. 1996-230; Reimann v. Commissioner, T.C. Memo. 1996-84.

Reliance on representations by insiders, promoters, or offering materials has been held an inadequate defense to negligence. Goldman v. Commissioner, supra; Pasternak v. Commissioner, 990 F.2d 893 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); McCrary v. Commissioner, 92 T.C. 827, 850 (1989); Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Pleas of reliance have been rejected when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business

aspects of the contemplated venture.  David v. Commissioner,
supra, Goldman v. Commissioner, supra; Freytag v. Commissioner,
supra; Beck v. Commissioner, 85 T.C. 557 (1985); Buck v.
Commissioner, supra; Lax v. Commissioner, T.C. Memo. 1994-329,
affd. without published opinion 72 F.3d 123 (3d Cir. 1995); Sacks
v. Commissioner, supra; Steerman v. Commissioner, T.C. Memo.
1993-447; Rogers v. Commissioner, T.C. Memo. 1990-619; see also
the Plastics Recycling cases cited in Sann v. Commissioner,
supra.

Petitioner testified that Marcus introduced the Resource
transaction to him and advised that "he thought it was a good
investment to make."  Like petitioner, Marcus is an attorney
specializing in bankruptcy law.  Petitioner does not claim that
Marcus had any education or experience in plastics materials or
plastics recycling.  Marcus and petitioner did not discuss
Resource or the Plastics Recycling transactions in any depth.
Indeed, petitioner did not learn how Marcus became aware of the
Plastics Recycling transactions, what Marcus did, if anything, to
investigate Resource or the Plastics Recycling transactions, or
even whether Marcus received a commission as a result of
petitioner's investment.  As an offeree representative, Marcus
would have been entitled to a commission in the amount of $2,500
as a result of petitioner's investment in Resource.  Since the
commission would have been paid by default to the general partner
if no offeree representative had claimed it, and since petitioner

has not suggested the name of any representative but Marcus, this record suggests a reasonable likelihood that Marcus received a commission as petitioner's offeree representative.

Petitioner testified that his accountant, Hefter, reviewed the offering memorandum on petitioner's behalf. According to petitioner, after Hefter reviewed it, and in response to petitioner's questions, Hefter indicated that "it appeared to be sound", that the tax opinion "appeared to be accurate", and that "it appeared to be a valid investment based on the documents." (Emphasis added.) Petitioner did not indicate how much time and effort Hefter devoted to his review of the offering memorandum. Nor did he claim that Hefter personally investigated any aspect of the Resource transactions. Petitioner even stated that whatever comments he received from Hefter were "based on the documents". Petitioner acknowledged that Hefter's area of expertise was accounting, and petitioner never suggested that Hefter had any experience or expertise in plastics materials or plastics recycling. Petitioner provided no information as to the extent or nature of Hefter's knowledge of the income tax laws beyond the information that he was a practicing accountant who prepared petitioners' tax returns.

Petitioner did not call Marcus or Hefter to testify in this case, and his failure to do so gives rise to the inference that their testimony would not have been favorable to petitioners. See Mecom v. Commissioner, 101 T.C. 374, 386 (1993), affd.

without published opinion 40 F.3d 385 (5th Cir. 1994); Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); Sacks v. Commissioner, T.C. Memo. 1994-217. Petitioner's memory proved selective at trial. We found his testimony self-serving and at times incredible, and we are not required to accept it as true. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

We hold that petitioner's purported reliance on Marcus and Hefter was not reasonable, not in good faith, and not based upon full disclosure. Neither Marcus nor Hefter had any experience or expertise in plastics materials or plastics recycling. Petitioner did not know, and did not ask, whether Marcus had researched or investigated Resource or the Plastics Recycling transactions. The record is consistent with the conclusion that Marcus received a commission as the "offeree representative" in connection with the sale of a partnership interest to petitioner. Hefter did nothing more than review the offering memorandum and could only offer that the Resource transaction "appeared" valid based on the representations therein. A taxpayer may rely upon his advisers' expertise (in this case bankruptcy law and accounting), but it is not reasonable or prudent to rely upon an adviser regarding matters outside of his field of expertise or

with respect to facts that he does not verify. See <u>David v. Commissioner</u>, 43 F.3d at 789-790; <u>Goldman v. Commissioner</u>, 39 F.3d at 408; <u>Skeen v. Commissioner</u>, 864 F.2d 93 (9th Cir. 1989), affg. <u>Patin v. Commissioner</u>, 88 T.C. 1086 (1987); <u>Lax v. Commissioner</u>, T.C. Memo. 1994-329; <u>Sacks v. Commissioner</u>, <u>supra</u>; <u>Rogers v. Commissioner</u>, <u>supra</u>.

In this case, with the aid of petitioner's testimony and the stipulated facts, respondent has satisfied the burden of showing petitioner's negligence in claiming credits and deductions arising from his investment in the Resource partnership in the Plastics Recycling transaction.

### 3. Miscellaneous

Petitioners stipulated that the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000. Notwithstanding this concession, petitioners contend that they were reasonable in claiming credits on their 1981 Federal income tax return based upon each recycler's having a value of $1,162,666. In support of this position, petitioners submitted into evidence preliminary reports prepared for respondent by Ernest D. Carmagnola (Carmagnola), the president of Professional Plastic Associates. Carmagnola had been retained by the IRS in 1984 to evaluate the Sentinel EPE and EPS recyclers in light of what he described as "the fantastic values placed on the * * * [recyclers] by the owners." Based on limited information available to him at that time, Carmagnola preliminarily estimated

that the value of the Sentinel EPE recycler was $250,000.
However, after additional information became available to him,
Carmagnola concluded in a signed affidavit, dated March 16, 1993,
that the machines actually had a fair market value of not more
than $50,000 each in the fall of 1981.

We accord no weight to the Carmagnola reports submitted by
petitioners.  The projected valuations therein were based on
inadequate information, research, and investigation, and were
subsequently rejected and discredited by their author.  In one
preliminary report, Carmagnola states that he has "a serious
concern of actual profit" of a Sentinel EPE recycler and that to
determine whether the machines actually could be profitable, he
required additional information from PI.  Carmagnola also
indicates that in preparing the report, he did not have
information available concerning research and development costs
of the machines and that he estimated those costs in his
valuations of the machines.

Respondent rejected the Carmagnola reports and considered
them unsatisfactory for any purpose, and there is no indication
in the record that respondent used them as a basis for any
determinations in the notice of deficiency.  Even so, counsel for
petitioners obtained copies of these reports and urge that they
support the reasonableness of the value reported on petitioners'
1981 return.  Not surprisingly, said counsel did not call
Carmagnola to testify in this case but preferred instead to rely

solely upon his preliminary ill-founded valuation estimates (Carmagnola has not been called to testify in any of the Plastics Recycling cases before us).  The Carmagnola reports were a part of the record considered by this Court and reviewed by the Court of Appeals for the Sixth Circuit in the Provizer case, where we held the taxpayers negligent.  Consistent therewith, we find in this case, as we have found previously, that the reports prepared by Carmagnola are unreliable and of no consequence.

Petitioners cite the following cases in support of their position:  Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408; Sammons v. Commissioner, 838 F.2d 330 (9th Cir. 1988), affg. in part and revg. in part T.C. Memo. 1986-318; Braddock v. Commissioner, 95 T.C. 639 (1990); Ewing v. Commissioner, 91 T.C. 396 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); and Hill v. Commissioner, T.C. Memo. 1993-454.

However, the negligence additions to tax were dismissed in those cases for reasons inapposite to the facts of petitioners' case.  Unlike petitioners, the taxpayers in the Heasley case were of moderate education (neither had graduated from high school) and of moderate income, and they actively monitored their investment.  In the Sammons, Braddock, Ewing, and Hill cases, the taxpayers relied upon tax and/or investment advice from advisers they knew were qualified, or reasonably believed were qualified,

to give such advice.[2]  Petitioner, in contrast, purports to have relied upon the advice of an attorney and an accountant for the value of a purportedly technologically advanced plastics recycling machine and the economic viability of the Resource transaction.  Yet neither of petitioner's purported advisers had any expertise in plastics materials or plastics recycling. Further, petitioner did not learn whether the attorney had researched or investigated Resource or received a commission for the sale of a partnership share to him, and petitioner knew that the accountant had not investigated or confirmed any of the representations in the offering memorandum.  We consider petitioners' reliance on the Heasley, Sammons, Braddock, Ewing, and Hill cases misplaced.

4.  Conclusion as to Negligence

Under the circumstances of this case, petitioners failed to exercise due care in claiming a large loss deduction and tax

---

[2]     The taxpayers in Sammons v. Commissioner, 838 F.2d 330, 337 (9th Cir. 1988), affg. in part and revg. in part T.C. Memo. 1986-318, relied upon a "reasonably debatable" valuation by one of five appraisers--two of whom were exceptionally qualified--for the value of certain charitable deduction property.  In Braddock v. Commissioner, 95 T.C. 639 (1990), the taxpayers relied upon an adviser who claimed tax expertise with respect to a reporting issue that had never before been considered by any court, and the answer to which was not entirely clear from the relevant statutory language.  The taxpayers in Ewing v. Commissioner, 91 T.C. 396 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991), read and relied upon a tax opinion prepared by an attorney who at least two of the taxpayers had known and successfully dealt with for over 10 years.  In Hill v. Commissioner, T.C. Memo. 1993-454, the taxpayer relied upon an independent evaluation by his long-time accountant and a financial broker recommended by the accountant.

credits with respect to Resource on their 1981 Federal income tax return. Petitioner knew little about Resource. He did not thoroughly review the offering memorandum or seek explanation of the portions that he did not understand. Neither the attorney who informed him of Resource nor the accountant who reviewed the offering memorandum had any experience or expertise in plastics materials or plastics recycling. Moreover, the accountant did not research or investigate any of the representations in the offering memorandum, and petitioner did not learn what, if anything, the attorney had done. Petitioner did not even know whether the attorney was soliciting the investment for a commission. We hold, upon consideration of the entire record, that respondent has satisfied the burden of proof and that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2) for 1981. Respondent is sustained on this issue.

B. Section 6659--Valuation Overstatement

In the amended answer, respondent asserted that petitioners were liable for the section 6659 addition to tax on the portion of their underpayment attributable to valuation overstatement. Because the section 6659 addition to tax was raised for the first time in the amended answer, respondent has the burden of proof. Rule 142(a); Vecchio v. Commissioner, 103 T.C. at 196; Bagby v. Commissioner, 102 T.C. at 612.

A graduated addition to tax is imposed when an individual has an underpayment of tax that equals or exceeds $1,000 and "is attributable to" a valuation overstatement. Sec. 6659(a), (d). A valuation overstatement exists if the fair market value (or adjusted basis) of property claimed on a return equals or exceeds 150 percent of the amount determined to be the correct amount. Sec. 6659(c). If the claimed valuation exceeds 250 percent of the correct value, the addition is equal to 30 percent of the underpayment. Sec. 6659(b).

Petitioners claimed tax benefits, including investment tax credits and business energy credits, based on a purported value of $1,162,666 for each Sentinel EPE recycler. Petitioners concede that the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000. Therefore, if disallowance of petitioners' claimed tax benefits is attributable to that valuation overstatement, petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the tax benefits claimed with respect to Resource.

Petitioners contend that section 6659 cannot apply in this case because they conceded the claimed tax benefits relating to Resource. In the alternative, petitioners contend that respondent erroneously failed to waive the section 6659 addition to tax. We reject both of these arguments for reasons set forth below.

## 1. Concession of the Deficiency

Section 6659 does not apply to underpayments of tax that are not "attributable to" valuation overstatements. See McCrary v. Commissioner, 92 T.C. at 827; Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988). To the extent taxpayers claim tax benefits that are disallowed on grounds separate and independent from alleged valuation overstatements, the resulting underpayments of tax are not regarded as attributable to valuation overstatements. Krause v. Commissioner, 99 T.C. 132, 178 (1992) (citing Todd v. Commissioner, supra), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994). However, when valuation is an integral factor in disallowing deductions and credits, section 6659 is applicable. See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449; Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991) (the section 6659 addition to tax applies if a finding of lack of economic substance is "due in part" to a valuation overstatement), affg. T.C. Memo. 1989-684; Masters v. Commissioner, T.C. Memo. 1994-197, affd. without published opinion 70 F.3d 1262 (4th Cir. 1995); Harness v. Commissioner, T.C. Memo. 1991-321.

Petitioners argue that their concession of the tax benefits related to Resource precludes imposition of the section 6659 addition to tax. The basis for petitioners' concession is not stated in the stipulation of settled issues, and petitioners

point out that the notice of deficiency "merely asserts that the claimed losses and credits were disallowed because Petitioners have not established their entitlement thereto."  According to petitioners, "Unless it is clear that the only possible basis for * * * [their] concession was the existence of a valuation overstatement, it is impossible to attribute the underpayment involved herein to a valuation overstatement."

However, we have found herein that the Resource transaction lacked economic substance due to overvaluation of the recyclers, notwithstanding petitioners' open-ended concession.  This is not a situation where we have "to decide difficult valuation questions for no reason other than the application of penalties." See McCrary v. Commissioner, supra at 854 n.14.  The value of the Sentinel EPE recycler was established in Provizer v. Commissioner, T.C. Memo. 1992-177, and stipulated by the parties. As a consequence of the inflated value assigned to the recyclers by Resource, petitioners claimed a loss deduction and credits that resulted in an underpayment of tax, and we held that the Resource transaction lacked economic substance.  Regardless of petitioners' concession, in this case the underpayment of tax was attributable to the valuation overstatement.

Moreover, concession of tax benefits such as the investment tax credit in and of itself does not relieve taxpayers of liability for the section 6659 addition to tax.  See Dybsand v. Commissioner, T.C. Memo. 1994-56; Chiechi v. Commissioner, T.C.

Memo. 1993-630.  Instead, the ground upon which the tax benefits are disallowed or conceded is significant.  Dybsand v. Commissioner, supra.  Even in situations in which there are arguably two grounds to support a deficiency and one supports a section 6659 addition to tax and the other does not, the taxpayer may still be liable for the addition to tax.  Gainer v. Commissioner, 893 F.2d 225, 228 (9th Cir. 1990), affg. T.C. Memo. 1988-416; Irom v. Commissioner, 866 F.2d 545, 547 (2d Cir. 1989), vacating in part T.C. Memo. 1988-211; Harness v. Commissioner, supra.

In the present case, no argument was made and no evidence was presented to the Court to prove that disallowance and concession of the claimed loss deduction and investment tax credits related to anything other than a valuation overstatement. To the contrary, petitioners stipulated substantially the same facts concerning the Resource transactions as we found in Provizer v. Commissioner, supra.  In the Provizer case, we held that the taxpayers were liable for the section 6659 addition to tax because the underpayment of taxes was directly related to the overvaluation of the Sentinel EPE recyclers.  The overvaluation of the recyclers, exceeding 2,325 percent, was an integral part of our findings in Provizer that the transaction was a sham and lacked economic substance.  Similarly, the record in this case plainly shows that the overvaluation of the recyclers is integral

to and is the core of our holding that the Resource transaction was a sham and lacked economic substance.

Petitioners' reliance on McCrary v. Commissioner, 92 T.C. at 827, and Rogers v. Commissioner, T.C. Memo. 1990-619, is misplaced. In the McCrary case, the taxpayers conceded disentitlement to their claimed tax benefits and the section 6659 addition to tax was held inapplicable. However, the taxpayers' concession of the claimed tax benefits, in and of itself, did not preclude imposition of the section 6659 addition to tax. Rather, the section 6659 addition to tax was disallowed because the agreement at issue was conceded to be a license and not a lease. In the Rogers case, this Court rejected the section 6659 addition to tax because we had "not found that the credits were disallowed due to an overvaluation". In contrast, the record in this case plainly shows, and we have so held, that petitioners' underpayment was attributable to overvaluation of the Sentinel EPE recyclers. We consider petitioners' reliance on McCrary v. Commissioner, supra, and Rogers v. Commissioner, supra, to be inappropriate.[3]

---

[3]     Petitioners' citation of Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, in support of the concession argument is also inappropriate. That case was not decided by the Court of Appeals for the Fifth Circuit on the basis of a concession. Moreover, the Court of Appeals for the Second Circuit and this Court have not followed the Heasley opinion with respect to the application of sec. 6659. See Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684.

We held in Provizer v. Commissioner, supra, that each Sentinel EPE recycler had a fair market value not in excess of $50,000. Our finding in the Provizer case that the Sentinel EPE recyclers had been overvalued was integral to and inseparable from our holding of a lack of economic substance. Petitioners stipulated that the Resource transaction was similar to the Clearwater transaction described in the Provizer case, and that the fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000. Given those concessions, and the fact that the record here plainly shows that the overvaluation of the recyclers was the only reason for the disallowance of the claimed tax benefits, we conclude that respondent has satisfied the burden of showing that the deficiency was attributable to overvaluation of the Sentinel EPE recyclers.

## 2. Section 6659(e)

Petitioners alternatively argue that respondent erroneously failed to waive the section 6659 addition to tax. Section 6659(e) authorizes the Commissioner to waive all or part of the addition to tax for valuation overstatement if taxpayers establish that there was a reasonable basis for the adjusted bases or valuations claimed on the returns and that such claims were made in good faith. Respondent's refusal to waive a section 6659 addition to tax is reviewable by this Court for abuse of discretion. Krause v. Commissioner, 99 T.C. at 179. Abuse of discretion has been found in situations where the Commissioner's

refusal to exercise discretion is arbitrary, capricious, or unreasonable.  See <u>Mailman v. Commissioner</u>, 91 T.C. 1079 (1988); <u>Estate of Gardner v. Commissioner</u>, 82 T.C. 989 (1984); <u>Haught v. Commissioner</u>, T.C. Memo. 1993-58.

Petitioner urges that he relied upon Marcus, Hefter, and the offering memorandum in deciding on the valuation he and his wife claimed on their tax return.  He contends that such reliance was reasonable, and, therefore, that respondent should have waived the section 6659 addition to tax.  However, as we explained above in finding petitioners liable for the negligence additions to tax, petitioner's purported reliance on Marcus, Hefter, and the offering memorandum was not reasonable.  Petitioner's review of the offering memorandum was inadequate.  Marcus and Hefter had no expertise in plastics materials or plastics recycling.  Hefter only read the offering memorandum, and petitioner failed to learn what, if anything, Marcus had done.

We hold that petitioners did not have a reasonable basis for the adjusted basis or valuation claimed on their tax return with respect to the investment in Resource.  In the instant case, respondent could find that petitioner's reliance on Marcus, Hefter, and the offering memorandum was unreasonable.  The record in this case does not establish an abuse of discretion on the part of respondent but supports respondent's position.  We hold that respondent has satisfied the burden of showing that respondent's refusal to waive the section 6659 addition to tax in

this case is not an abuse of discretion.  Petitioners are liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed tax benefits.  Respondent is sustained on this issue.

Decision will be entered

under Rule 155.